(No. 30656.—)

COLL GILLIES, Appellee, *vs.* LITTLE VERMILION SPECIAL DRAINAGE DISTRICT, Appellant.

*Opinion filed September 24, 1948—Rehearing denied Nov. 11, 1948.*

GUNN, J., took no part.

CRAIG & CRAIG, of Mattoon, and DOBBINS, DOBBINS & FRAKER, of Champaign, for appellant.

M. P. LAWLESS, of Chicago, I. RAY CARTER, HORACE E. GUNN, and ROBERT Z. HICKMAN, all of Danville, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

September 17, 1947, the commissioners of the Little Vermilion Special Drainage District of Champaign and Vermilion counties adopted a new classification for benefits of the lands in the district. Coll Gillies, a property owner, objected to the reclassification of his land upon the ground it had theretofore twice been judicially determined that his land derives no benefit from the drainage improvements undertaken in the district. From an order of the commissioners overruling his objections and confirming the classification as to his land without change, Gillies appealed to the county court of Vermilion County. Evidence was heard and, on December 15, 1947, judgment rendered in favor of the objector, Gillies, and against defendant, the drainage district, ordering the classification of the land belonging to Gillies cancelled and quashed and his land classified at zero. The drainage district prosecutes this appeal.

Organized in 1894 under the provisions of the Farm Drainage Act of 1885, (Ill. Rev. Stat. 1947, chap. 42, par. 82 *et seq.*,) the Little Vermilion Special Drainage District contains approximately 22,700 acres of land, the major portion of which lies in Champaign County and the remainder in Vermilion County. The Little Vermilion River has its origin in the district and provides the natural drainage outlet for all land in the district. Starting in Champaign County, the river runs through the district in an easterly direction. Gillies owns 2,068 acres of land in the eastern part of the district, all situated in Vermilion County. His land embraces both banks of the river for a distance of one and eight-tenths miles and the eastern boundary of

his property is about two miles upstream from the district outlet.

Prior to the creation of the drainage district, the Little Vermilion River had been dredged and improved by the voluntary action of the landowners. Upon the organization of the district in 1894, the river became the main ditch of the district. The 2,068 acres of land now held by Gillies were then owned by Samuel W. Allerton. The first drainage commissioners early determined upon plans for the work of the district and adopted a classification of lands. Allerton objected to the assessment of benefits against his land and a trial in the circuit court of Champaign County followed. On March 25, 1895, the court found that Allerton's land would not be benefited by the proposed work·and entered a judgment modifying the assessment roll so as to set aside and exclude all assessments against his land.

In April, 1911, the drainage commissioners ordered the main ditch cleaned out, deepened and improved throughout its entire length. The original classification of the lands in the district was set aside and a new classification adopted. Again Allerton objected to the classification of his land. From an adverse decision of the commissioners, Allerton prosecuted an appeal to the county court of Vermilion County. In December, 1911, the parties entered into a stipulation whereby Allerton gave the district the right to clean out the ditch through his land and the district agreed to a finding that his land would receive no benefits from the contemplated improvements and repairs. Pursuant to the stipulation, the court, on January 2, 1912, found that Allerton's land would "receive and derive no benefits whatever from the proposed work or improvements" and entered a judgment quashing the commissioners' classification and classifying the land at zero.

The next major construction and repair work originated with the .organization, in 1946, of the Little Vermilion

Outlet Drainage District of Vermilion County. The outlet district is approximately the same size as the special district and adjoins it to the east. The Little Vermilion River also forms the main ditch of the new district. The commissioners of the new district found that the river does not furnish an adequate outlet for the drainage of lands in the outlet district or in the special district and directed that the channel of the river in the district be deepened, widened and straightened in order to obtain a rapid and more direct discharge of the water. Early in 1947, the two districts entered into a contract whereby the Little Vermilion Special Drainage District agreed to pay approximately one third of the cost of improvements of the main ditch in the Little Vermilion Outlet Drainage District. The contract received the approval of the county court of Vermilion County in March, 1947. In finding that the improvements in the outlet district would also benefit the lands in the special district, the court confirmed a recitation to the same effect found in the contract between the districts. Gillies was a party to the proceedings in the county court of Vermilion County but interposed no objections to the contract.

In September, 1947, the commissioners of the special district ordered the construction of additional work on the main ditch of the district consisting principally of straightening, deepening and widening the main ditch and the removal of trees and brush from banks and channel of the ditch. In conjunction with the additional work in the district and the assessment necessitated by reason of the contract with the outlet district, the commissioners adopted a new classification of lands. Once again, the Allerton land, now owned by Gillies, was classified as receiving substantial benefits from the proposed improvements. As related, the county court subsequently cancelled and quashed the classification of land belonging to the objector and classified his land at zero.

Seeking a reversal, the appellant, the Little Vermilion Special Drainage District, first urges that the doctrine of *res judicata* is not applicable to proceedings involving the reclassification for benefits of lands of a drainage district. To sustain its contention, appellant has recourse to section 21 of the Farm Drainage Act providing that where, from results and experience, the commissioners determine an existing classification is not fairly adjusted according to the benefits to be derived from new or additional improvements, a new classification shall be made. (Ill. Rev. Stat. 1947, chap. 42, par. 103.) The argument is advanced that to apply the doctrine of *res judicata* in a reclassification proceeding is manifestly erroneous because it would thwart the commissioners in the performance of their statutory duty to reclassify, from time to time as changed circumstances necessitate, the lands of a district. Going even further, the assertion is made that in the instant case the trial court held a prior judgment fixing the classification of lands is effective for all time and not subject to revision under any circumstances, thus forever precluding a new classification of drainage district lands. Appellant's view of the judgment is grossly inaccurate. The county court simply held that, where an objector's land has previously been adjudged to derive no benefits from an earlier drainage improvement, and there appears, as concerns the land in question, no substantial difference between the former construction and the work presently contemplated, the prior judgment controls and the former classification of the objector's land is binding on the commissioners. The application of *res judicata* does not in any way preclude the commissioners from exercising their duty to adopt a new classification for the district as a whole nor does it forever prohibit the revision of a judicially established classification of a particular tract of land. There is nothing whatsoever in the judgment of the trial court to preclude drainage commissioners, as part of a general reclassification,

from altering the classification of a particular parcel fixed by judicial order, where changed circumstances exist. The doctrine of *res judicata* applies to drainage district proceedings in the same manner and with the same force and effect as it governs other litigation generally.

As frequently announced, the principle of *res judicata* simply means that where a question has been directly in issue and decided by a court of competent jurisdiction, the issue cannot again be litigated in a future action between the same parties or their successors in interest, either in the same court or any other court of concurrent jurisdiction. (*Leitch* v. *Hine,* 393 Ill. 211; *Schafer* v. *Robillard,* 370 Ill. 92.) In this connection, the appellee, Gillies, contends that, in 1947, as in 1911 and 1894, his land was so favorably situated by nature that it had adequate and complete drainage into the Little Vermilion River without any deepening or widening of the stream. He stands on the proposition that two courts having already decided that his land had adequate natural drainage even before 1911 and before 1894 he should not be required to pay for additional work in the district and contribute to improvements in the adjoining outlet district which, while helpful to other lands in the district, do not confer any benefits on his land. On the other hand, appellant contends that the doctrine of *res judicata* is not decisive here because the prior judgments classifying the land in question at zero were based on drainage improvements entirely or substantially dissimilar to the work determined upon in 1947. Appellee having recourse to the principle of *res judicata,* the burden was on him to show that the same fact or question decided in the former litigation has again been put in issue in the case at bar. *City of Geneseo* v. *Illinois Northern Utilities Co.* 378 Ill. 506; *Harding Co.* v. *Harding,* 352 Ill. 417.

Confining our attention to the 1911 and 1947 improvements as they relate to appellee's land, we find that the record fully substantiates the conclusion that the improve-

ments undertaken in the respective years are substantially identical. The land is the same, the river is still the main ditch and the private ditch and tiles on appellee's land still empty into the river bed as they did in 1911, in 1894 and earlier. In both 1911 and 1947, the improvement proposed was the straightening, widening and deepening of the main ditch. Although the work in 1947 involved a narrow river bottom and wide side slopes, whereas the construction in 1911 resulted in a wide bottom and rather steep banks, the volume of water which could be carried was approximately the same and the gradients were identical, being three and one-third feet of vertical rise for every ten thousand feet of lineal distance in each case. The exact depth of the ditch bottom in the two improvements, although disputed, is a matter of little moment because the record discloses that, at either of the respective depths contended for by the parties, appellee's lands have full and adequate drainage into the ditch.

Appellant makes much of the fact that a large part of the 1947 assessment results from its agreement to contribute to the construction cost of the improvements proposed by the Little Vermilion River Outlet Drainage District. It appears that the work undertaken by the adjoining outlet district will lead to a more rapid and reliable discharge of water in the special drainage district. While this may result in benefits to the lands of the special district generally, there is no indication that the additional improvement will result in benefits to the particular land owned by appellee. On the record thus made, the trial court correctly held that the judgment entered on January 2, 1912, was decisive of the present controversy.

Lastly, appellant itself seeks to invoke the doctrine of *res judicata,* relying on the order entered in the county court of Vermilion County in March, 1947. As recounted, in that proceeding the county court found the lands of the special district would receive benefits from the improve-

ments proposed in the outlet district and entered an order approving the contract between the two districts. It will suffice to observe in this connection that the earlier proceeding did not involve the issue as to whether individual tracts of land were benefited but, rather, the twin issues of whether the special district as a whole was benefited and the costs fairly allocated between the two districts. The issue of benefits to appellee's tract was neither at issue nor adjudicated in that litigation.

The judgment of the county court of Vermilion County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE GUNN took no part in the consideration or decision of this case.