Gladys M. HAZEL, administratrix of the Estate of Harold M. Houghton, Deceased, Plaintiff, v. ALASKA PLYWOOD CORPORATION, a corporation, and Juneau Lumber Co., Inc., a corporation, Defendants.

No. 7309–A.

District Court, Alaska. First Division, Juneau.

Jan. 31, 1957.

644

John H. Dimond (of Faulkner, Banfield & Boochever), and F. O. Eastaugh (of Robertson, Monagle & Eastaugh), Juneau, for plaintiff.

Joseph A. McLean, Juneau, for defendant Alaska Plywood.

KELLY, District Judge.

Plaintiff herein brings this suit as administratrix of the estate of Harold M. Houghton, deceased, who, during his lifetime, was her husband, on behalf of herself, as widow, and her two children, for the wrongful death of the said Harold M. Houghton, under Sec. 61–7–3, A.C.L.A.1949, as amended by Chap. 89, S.L.A.1949.

The action is against the Alaska Plywood Corporation, hereinafter called Plywood, charging that the decedent's death was caused by the negligence of employees of the defendant Plywood and that said defendant is a third party within the purview of Sec. 43–3–30, A.C.L.A.1949.

Plaintiff claims that decedent was an employee of the Juneau Lumber Company, Inc., hereinafter called Juneau, and that the accident which caused his death arose out of and in the course of his employment by reason whereof the

decedent's widow and children became entitled to compensation under the Alaska Workmen's Compensation statute, Sec. 43–3–1 et seq. A.C.L.A.1949. Action was brought under this Act before the Alaska Industrial Board and death compensation benefits were paid to plaintiff by Juneau, or by its workmen's compensation insurance carrier.

Plaintiff claims that Juneau, the employer who has paid such compensation, is a necessary, even though merely a nominal, party to an action for damages for wrongful death; that should recovery be had against the third party, whose alleged negligence caused the death, the employer or his insurance carrier would be subrogated to the extent of the amount they had paid under the compensation award, namely $12,950. Plaintiff further claims she should recover the maximum amount of $15,000 allowed under the statute for the reason that mortality tables show decedent, who was 43 years of age at his death, had a life expectancy of at least 25 years and was earning at least $650 per month.

Because of the connection of the various corporations involved herein it would be well at this point to set out this relationship. The evidence discloses that there were four so-called Morgan companies; Columbia Lumber Company, hereinafter called Columbia; Tongass Timber Company, hereinafter called Tongass; Plywood, and Juneau. Thomas Morgan testified that Columbia was the parent corporation and that the other corporations were developed later either by purchase of controlling interest or by incorporation. Tongass is a wholly owned subsidiary of Columbia. Juneau was taken over by Columbia as a separate corporation, Columbia owning 85% of the stock of Juneau at the time of the accident. Morgan was president of Plywood at that time.

Exhibit A shows the area of operation of the different corporations, including the Juneau property and most of the Plywood plant, and shows the area of responsibility of each. Tongass took over the operation of the log pond

with the exception of one employee each from Plywood and Juneau. The walkways and other installations directly adjacent to the Plywood plant were installed by Plywood and the same is true of Juneau. Other installations between those two points were by Tongass. The electric-powered saw being operated by the decedent was the property of Tongass, as was the shed in which it had been installed. Tongass, Plywood, and Juneau all performed work on this particular pond. The maintenance of any piece of equipment that was used in this joint operation was performed by the corporations which benefitted principally from that operation. Tongass brought logs into the pond and after being cut, these logs became the property of either Plywood or Juneau. The pond was the common meeting ground for each corporation to obtain that portion of the logs from Tongass which was best suited for their use. At the time of the accident Juneau was closed down. Tongass had a foreman and one helper on the job, Plywood had two men, and the decedent was there in the interests of Juneau. The deceased, being a full time contract employee of Juneau, was caring for Juneau's interest during the shutdown, chiefly to procure for Juneau the portion of the logs which would be suitable for Juneau's use when operations were resumed.

During the night of November 2nd–3rd, 1953, a steamboat rammed the log pond and broke it up considerably, damaging the float on which the power-saw equipment was installed so badly that it had to be entirely replaced. After this accident occurred the superintendent of Plywood was notified to make the necessary repairs. Several employees of Plywood worked during the rest of the night and until 8 a.m. to accomplish this. It seems possible that employees of the other companies interested in the log pond also took part, however the electrical work was done almost entirely by one Easley, an employee of Plywood.

One of the items which was installed on the new float was the electrical motor-starter box for the power-saw hookup.

·The cover of this box had been lost during the mishap and no adequate replacement could be found. In place of the cover a section of a yellow slicker raincoat was nailed over the box for a cover. This was done by employees of Plywood and it is the claim of plaintiff that it was the absence of an adequate cover on the electrical switchbox that brought about decedent's death. They claim it was the omission and negligence of Plywood employees and therefore under the doctrine of ·respondeat superior Plywood is liable. The switchbox contained terminals carrying sufficient electrical current to kill a man and was an exceptionally dangerous instrumentality which should have been completely protected and that it was the duty of Plywood to furnish a safe and proper appliance. Plaintiff claims that the negligence in failing in such duty resulted in the death of the decedent, and Plywood should respond in damages for such death.

Plaintiff further claims that even though Juneau was guilty in some respect of concurring negligence contributing to decedent's death, this is no defense in a suit against a negligent third party, and the provisions of the Workmen's Compensation Law, supra, giving an injured employee the right to proceed against a negligent third party, contains no exceptions and makes the sole test of liability the negligence of the third party.

It should be pointed out here that before Easley left to go home the morning after making the repairs, he went to the office of the Plywood superintendent, one Rice, and told him of the situation about the missing cover of the electrical motor-starter box, calling his attention to the danger, and was advised by the superintendent that he would have somebody take care of it.

The deceased Harold M. Houghton did not work on the repairs nor did he have anything to do with the installation of the motor-starter box. On November 4th, since Juneau was shut down, he acted as Juneau's representative at the

log pond and at times operated the electric saw in cutting the logs. He was working on an extra large log with this power saw when he slipped on the platform where he was working and in falling caught the motor-starter box and apparently received an electrical shock therefrom which caused his death.

Defendant claims that the deceased was employed in the operation to do work for both Juneau and Plywood and was a joint or dual employee of both. He claims, therefore, as such employer, Plywood could only be held liable, if at all, to Juneau for 25% of the amount paid by Juneau for the compensation award.

■■ Plaintiff's decedent was hired as a foreman by Juneau in Seattle upon a written contract (Plaintiff's Exhibit No. 3) and was responsible only to one Gould, the superintendent of Juneau. There is no evidence that any of his time was ever charged back to any of the other Morgan companies, as was the case with many other employees of these companies when they worked for the benefit of one of the corporations other than the one from which their pay check was received. The Alaska Industrial Board in its finding (Plaintiff's Exhibit No. 5) shows that Juneau, Plywood, and Tongass all appeared at that hearing by their president, Thomas A. Morgan, and by their counsel, and that counsel for the applicant therein as well as counsel for defendant corporations, stipulated that the deceased at the time of his death was employed by Juneau and was so engaged in the course of his duties when he was killed by accident. If the facts as set forth above did not conclusively show that the deceased was solely an employee of Juneau, the assertion of the claim of employment in any particular by Plywood would be res judicata, as the decision of the Alaska Industrial Board definitely made this determination, which determination is binding upon this court. The findings of an administrative agency are in the nature of judgments and are binding in subsequent actions involving the same parties and subject matter. Hysteam Coal Corpora-

tion v. Ingram, 1940, 283 Ky. 411, 141 S.W.2d 570; Andrews v. Gross & Janes Tie Co., 1948, 214 Ark. 210, 216 S.W.2d 386; Gillies v. Little Vermilion Special Drainage Dist., 1948, 401 Ill. 344, 81 N.E.2d 916.

Defendant also claims that the death by electrocution was not proven; that Plywood owed no duty to the deceased in any respect which would make them liable herein, and that plaintiff is barred from recovery by (a) contributory negligence of deceased, and (b) the risk deceased assumed in working on this float with knowledge of this dangerous condition.

█ So far as the death of plaintiff's decedent is concerned, this Court finds the testimony on this point amply sustains plaintiff's claim that the deceased met his death by electrocution.

██ Defendant claims in substance that Plywood owed no duty to the deceased and that because Plywood was notified by Mr. Gould, the superintendent of Juneau, about the steamship accident and were requested by him to make the repairs, that Plywood employees were in reality working for Juneau. This position is untenable, for Plywood itself was the really interested party in seeing that the repairs were made quickly because their plant was in operation while Juneau was closed down. Even if Juneau ordinarily maintained the float (and there is a difference in the testimony in this regard) it is still a fundamental principle of law that even one who undertakes to do an act or perform a service for another is bound to use reasonable care and skill in the performance thereof, and is liable for his failure in this respect. 65 C.J.S., Negligence, § 4, p. 341; 38 Am.Jur. 659, Negligence, Sec. 17; Ray v. Pacific Gas & Electric Co., 1934, 3 Cal.App.2d 329, 39 P.2d 812; Brunelle v. Nashua Building & Loan Ass'n, 1949, 95 N.H. 391, 64 A.2d 315; Sult v. Scandrett, Mont.1947, 178 P.2d 405.

█ This Court further feels that Plywood is responsible for the negligent repairs which brought about the

death of plaintiff's decedent and are liable therefor. Kalinowski v. Truck Equipment Co., 1933, 237 App.Div. 472, 261 N.Y.S. 657.

As a general rule the doctrine of assumption of risk pertains to controversies between master and servant. Parker v. Grand Trunk Western Railroad Co., 261 Mich. 293, 246 N.W. 125. Therefore this defense is not available to Plywood since this Court has held, supra, that Plywood was in no sense an employer of the deceased.

The conduct which defendant asserts as an assumption of risk should more properly be considered in the realm of contributory negligence and so far as defendant's contention that there was contributory negligence on the part of the deceased is concerned, it should be pointed out that the allegations could only be asserted if Plywood did not contemplate that the employees would use the float. Here, however, Plywood fully expected them to do so. The use of the saw float in and of itself did not constitute contributory negligence. It was incumbent upon Plywood to show that the deceased fully appreciated the danger of the situation and had failed to exercise ordinary and reasonable care for his own protection. This burden has not been sustained.

To summarize, this Court holds that the deceased was solely an employee of Juneau and in no sense an employee of Plywood; that Plywood was negligent and that the negligence caused the accident; that as a result of the accident, the deceased met his death by electrocution, and that he was not guilty of contributory negligence, and therefore that Plywood is liable to the plaintiff as administratrix of the deceased's estate.

In view of the age of the deceased, his condition of health, his life expectancy, and his monthly earnings, judgment will be entered herein for the maximum amount allowed under the statute, namely the sum of $15,000.