*In re* APPLICATION OF COUNTY COLLECTOR.—(JACI L. BURDASH, Petitioner-Appellant, *v.* SIDNEY R. OLSEN, Registrar of Titles, Respondent-Appellee.)

First District (1st Division)   No. 62038

Opinion filed May 2, 1977.

574

Allan L. Blair, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner and Melvin A. Rieff, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE BUA delivered the opinion of the court:

This is an appeal from an order which granted the motion of respondent-appellee, Sidney R. Olsen, Cook County registrar of titles, to strike and dismiss the petition of Jaci L. Burdash, appellant, for a rule to show cause why Olsen should not be held in contempt of court for refusing to comply with the provisions of a certain tax deed order. The tax deed order directed the registrar to issue a new owner's certificate of title to the subject property to appellant Burdash. The registrar refused to do so on grounds that Cook County had acquired an interest in the subject property by way of a prior condemnation proceeding.

On March 20, 1967, the County of Cook filed a petition to condemn the subject property for use in construction of the West Leg of the Dan Ryan Expressway, also known as Interstate Route No. 57. The property had been registered under the Torrens System, the registered certificate of title showing Margaret Talcott to be the owner. The court found just compensation for the taking of fee simple title to the premises to be $53,245. Judgment to that effect was entered on September 15, 1967, and on October 4, 1967, the award was duly deposited with the Cook County Treasurer.

However, no document indicating the pendency or completion of the condemnation proceeding was filed with the registrar of titles or memorialized on the certificate of title. The property continued to be assessed for taxes, which went unpaid. No objection to these assessments was made, and no exemption certificate was filed with the assessor's office. In December, 1970, pursuant to the county collector's application, a judgment and order of sale was entered against the property for the 1969 general taxes. The property was purchased for those taxes at a public sale on February 23, 1971, by Interstate Bond Company (hereinafter Interstate), petitioner-appellant Burdash's predecessor in title. The certificate of purchase was registered on January 13, 1972.

Interstate filed a petition for a tax deed order on July 9, 1973. On the day the extended redemption period expired, November 23, 1973, Interstate assigned for value its certificate of purchase to petitioner-appellant Burdash (hereinafter appellant). Appellant paid the general taxes due for 1970, 1971, and 1972. Interstate filed its application for an order on the petition on December 3, 1973, and appellant was substituted as petitioner of record. An affidavit with supporting exhibits, dated November 23, 1973 and attached to the application, recited that the property was "unimproved" and unoccupied, that a search of the appropriate records in the office of the recorder of deeds and clerk of the circuit court had revealed Margaret Talcott to be the sole owner, and that all notices required by law had been given to interested parties, including Margaret Talcott and Sidney R. Olsen, registrar of titles. However, at a hearing on the application for a tax deed order, on February 8, 1974, Allan Blair, counsel for appellant, testified that he knew that the subject property had been in use as part of Interstate Route No. 57 since the summer of 1973. Nevertheless, on May 15, 1974, an order was entered, in amended form, directing the issuance of a tax deed and a new certificate of title in appellant's name. In August 1974, appellant presented a tax deed to the property, together with other necessary documents, at the office of the registrar of titles. The registrar refused to complete the transfer of title, informing appellant that Cook County had acquired an interest in the land by virtue of a prior condemnation proceeding.

Appellant filed a petition for a rule to show cause why the registrar should not be held in contempt of court for his refusal to comply with the terms of the tax deed order. The registrar filed a motion to strike and dismiss appellant's petition, arguing that the subject property had become exempt from taxation by virtue of its condemnation and subsequent use as a public highway, that the judgment and order of sale, being thus rendered against exempt property, was void, and that the tax deed order based on that judgment was therefore also void and subject to collateral attack. In her answer to the motion to strike and dismiss, appellant argued that Cook County had acquired no interest in the subject property by way of the condemnation, that even if it had so acquired any such interest the property remained subject to taxation at all times, and that, in any case, the fact that the property had remained subject to taxation had been conclusively determined and could not be relitigated by the registrar. The court granted the motion to strike and dismiss, finding that "* * * the completion of the eminent domain proceeding terminates the right of a tax deed buyer to receive a deed." Further, the court vacated its earlier tax deed order and set aside the tax sale as a sale in error, pursuant to section 260 of the Revenue Act (Ill. Rev. Stat. 1973, ch. 120, par. 741), ordering that all tax payments made by the appellant be refunded.

■■ The first issue on appeal is whether, by way of its condemnation and subsequent use for a public highway, the subject property was rendered exempt from taxation in 1969. Pursuant to the authority granted in the Illinois Constitution (Ill. Const. 1870, art. IX, § 3) the legislature, by enacting the various subsections of section 19 of the Revenue Act (Ill. Rev. Stat. 1967, ch. 120, par. 500 *et seq.*) has exempted certain types of property from taxation. The specific provision herein relevant, section 19.9 (Ill. Rev. Stat. 1967, ch. 120, par. 500.9) exempts "All market houses, public squares and other public grounds owned by a municipal corporation and used exclusively for public purposes * * *." The term "municipal corporation" as used here includes counties. (*Perkins v. Board of County Commissioners* (1916), 271 Ill. 449, 111 N.E. 580.) We find that the requirements of ownership by a municipal corporation and exclusive use for public purposes were satisfied, and that accordingly the property was exempt from taxation under section 19.9 of the Revenue Act.

As regards the ownership of the subject property by a municipal corporation, the relevant facts appear in the record and are not disputed. Rather, we are presented with the purely legal issues of what if any interest in the property was obtained by the county through the condemnation, and whether such interest was sufficient to render the property "owned by a municipal corporation" for purposes of the exempting statute.

■■ Appellant contends that the county acquired no interest

whatsoever in the subject property by way of the condemnation. We recognize that the Torrens Act (Ill. Rev. Stat. 1967, ch. 30, par. 45 *et seq.*) controls essentially all dealings with registered lands. (*People v. Mortenson* (1949), 404 Ill. 107, 88 N.E.2d 35; Ill. Rev. Stat. 1967, ch. 30, par. 90.) Further, it is clear in the present case that there was no compliance with the specific provisions of the Act regarding the transfer of title following a condemnation. Section 58a of the Torrens Act (Ill. Rev. Stat. 1967, ch. 30, par. 102.1) indicates that such transfer is complete when, after a certified copy of the order determining just compensation and proof of payment or deposit of the award are filed with the Registrar, a new owner's certificate of title is issued to the condemnor. (See Ill. Rev. Stat. 1967, ch. 30, pars. 93, 98.) There was, then, no full transfer of title as contemplated by the Torrens Act. However, we find that the taking by condemnation, in all other respects complete, effectively transferred equitable title to the county.

■■  The question of the effect of an unregistered condemnation is not specifically dealt with in the Torrens Act. Appellant contends that section 85 of the Act (Ill. Rev. Stat. 1967, ch. 30, par. 122) renders the condemnation a complete nullity. Section 85 provides that "No judgment or decree or order of any court shall be a lien upon or affect registered land * * *" until it is properly memorialized. We find this section, however, to be inapplicable to the present case. In a condemnation proceeding, the final judgment of the court does not amount to or directly result in a transfer of title, even as to unregistered land, nor does the judgment itself "affect" the land in any real sense. The judgment merely establishes that compensation which must be paid should the condemnor then determine to exercise its statutory or constitutional right to take the property. (See *County of Cook v. Malysa* (1968), 39 Ill. 2d 376, 235 N.E.2d 598.) Only when the award of compensation is paid or properly deposited for payment does title, relating back to the time of the petition to condemn, vest in the condemnor. (*Board of Junior College District 504 v. Carey* (1969), 43 Ill. 2d 82, 250 N.E.2d 644; *Chicago Park District v. Downey Coal Co.* (1953), 1 Ill. 2d 54, 115 N.E.2d 223.) Section 85 of the Revenue Act, having reference only to rights or interests in registered land arising as a direct result of a court order, judgment, or decree, has no relevance in the context of a condemnation.

■■  We think that the effect of an unregistered condemnation is instead indicated by section 54 of the Torrens Act (Ill. Rev. Stat. 1967, ch. 30, par. 98). Analysis of the language of section 54 as well as the overall structure and purpose of the Torrens Act supports this conclusion. Section 54 provides that any "deed, mortgage, lease or other instrument purporting to convey, transfer, mortgage, lease, charge or otherwise deal with registered land * * * shall take effect * * * by way of contract,

between the parties thereto * * *" unless and until it is duly registered. Thus, it has been held that a properly executed and delivered deed to Torrens property will effectively convey equitable title even if it is not registered. (*Kostelny v. Peterson* (1960), 19 Ill. 2d 480, 167 N.E.2d 203.) Section 54 lies in that portion of the Torrens Act entitled "Transfers and Charges," and by its language clearly purports to deal generally with all such transfers and charges. A condemnation is certainly viewed as involving a "transfer" of land, since section 58(a), dealing with title passage by condemnation, is also found in the "Transfers and Charges" portion of the Act. Hence, it would appear that section 54 of the Torrens Act was intended to apply to transfers of property by condemnation.

■■ Moreover, this interpretation of section 54 is most consistent with well-established principles regarding the basic policy and purpose of the Torrens Act. The Torrens Act is fundamentally designed for the protection of good faith *purchasers*, and judgment creditors, who do not advance funds in reliance on record title, do not in general enjoy an equal measure of protection. (*Hooper v. Haas* (1928), 332 Ill. 561, 164 N.E. 23; *Echols v. Olsen* (1976), 63 Ill. 2d 270, 347 N.E.2d 720.) Recognition of equitable interests in all who in good faith purchase interests in registered land, by condemnation or otherwise, while denying the same benefit to unregistered judgment creditors, is then entirely consistent with the basic policy of the statute. We conclude that the proof of deposit of the condemnation award constitutes an "* * * instrument purporting to * * * deal with registered land * * *" within the meaning of section 54 of the Torrens Act, and that accordingly, equitable title passed to the county upon the deposit of the award despite the failure to register that document.

■■ Further, we find that the equitable interest thus obtained by the county was sufficient to satisfy the requirement of ownership set forth in section 19.9 of the Revenue Act. On this point, appellant contends that section 19.9a of the Revenue Act (Ill. Rev. Stat. 1975, ch. 120, par. 500.9a) indicates a contrary legislative intent. Section 19.9a provides exemption for "All property that is being purchased by a governmental body under an installment contract pursuant to statutory authority and used exclusively for the public purposes of the governmental body." Appellant argues that this provision, by its very existence, implies that such installment contract purchases constitute the only case in which equitable title may be sufficient ownership for purposes of a tax exemption. We are, however, not persuaded by this contention. The thrust of section 19.9a is simply that where property is used exclusively for public purposes, tax exempt status is not to be denied simply on the basis that the public holds equitable but not legal title. As the court said in *People ex rel. Williamson v. City of Toulon:*

"By paragraph 9 of the same section [now Section 19.9 of the Revenue Act] 'all market houses, public squares or other public grounds used exclusively for public purposes; * * *' shall be exempt from taxation. When interpreted in the light of the constitutional provision aforesaid, all of the foregoing property, to be exempt, must be owned by a municipal corporation by such title that it can be said to be the property of such municipality.

It is contended by appellants that the property in question is held by Jackson and Downend as trustees for the city of Toulon and that the equitable title of the park is in the city, and that such equitable title is sufficient to exempt the property from taxation, as it has been used and is being used exclusively as a public park. *We would be quite willing to concede these propositions of appellants as true if the city had the complete equitable title.*" (Emphasis added.) 300 Ill. 408, 413, 133 N.E. 707.

■■ At this point, appellant seeks to interject the argument that under section 42 of the Torrens Act (Ill. Rev. Stat. 1967, ch. 30, par. 86) she cannot be charged with notice of the prior unregistered claim of the county, and that hence she must be held to "take free and clear from any alleged equitable claim." Section 42 of the Torrens Act reads:

"Except in case of fraud and except as herein otherwise provided, no person taking a transfer of registered land, or any estate or interest therein, or of any charge upon the same from the registered owner shall be held to inquire into the circumstances under which, or the consideration for which such owner or any previous registered owner was registered, or be affected with notice, actual or constructive, of any unregistered trust, lien, claim, demand or interest; and the knowledge that any unregistered trust, lien, claim, demand or interest is in existence shall not of itself be imputed as fraud."

This argument presents a serious distortion of the true issues involved in this appeal. To regard the essential question as one of the effective *priority* among two alleged interests in registered land is to lose sight of the crucial fact that one of those interests is the subject of a collateral attack in this proceeding. Admittedly, it is the very existence of the county's interest which forms the basis of this collateral attack on appellant's alleged interest. Nonetheless, we are not concerned *per se* with the question of whether appellant's interest is to be *subordinated* to the interest of the county; rather we are simply called upon to decide whether the order which forms the basis of appellant's claim is *entirely void*. Our opinion in no way disturbs the important rule set forth in section 42 of the Torrens Act; that rule is simply inapplicable to the present set of circumstances. The related or parallel issue of whether the

Registrar is a proper party to collaterally attack is considered in due course.

■■ Regarding the second requirement for exemption under section 19.9 of the Revenue Act, exclusive use for public purposes, the issue is one of whether the registrar sustained his burden of proving sufficient facts to establish the public use of the property in 1969. The rule has long been stated that one claiming the exempt status of property bears the burden of proving that exemption. (*Telco Leasing Inc. v. Allphin* (1976), 63 Ill. 2d 305, 347 N.E.2d 729; *Glen Oak Cemetery Co. v. Board of Appeals* (1934), 358 Ill. 48, 192 N.E. 673.) Although the present circumstances are somewhat atypical, we find that since the registrar is in effect asserting or claiming the benefit of an exemption statute, that burden properly lies with him. There is no question that the subject property was condemned in 1967 for public highway use. Further, the fact that such use had been fully realized at least as early as the summer of 1973 was established by the testimony of Allan Blair, trial counsel for appellant, at the February 8, 1974, hearing on appellant's application for a tax deed order. Appellant contends that such evidence is insufficient, and that absent direct record evidence that the property was being used as a highway in 1969, we must find that the registrar has failed to sustain his burden of proof. We disagree.

■■ We are aware of the holdings to the effect that where a tax exemption depends on use of the subject property for an exempt purpose, actual use of the property for that purpose is required. As the court said in *Skil Corp. v. Korzen*, "[E]vidence that land was acquired for an exempt purpose does not eliminate the need for proof of actual use for that purpose. Intention to use is not the equivalent of use. [Citations.]" (32 Ill. 2d 249, 252, 204 N.E.2d 738, 740.) However, it has also been found that property "in the actual process of development and adaptation" for exempt use may be treated as being devoted to such use. (*Illinois Institute of Technology v. Skinner* (1971), 49 Ill. 2d 59, 273 N.E.2d 371; see also *People ex rel. Pearsall v. Catholic Bishop of Chicago* (1924), 311 Ill. 11, 142 N.E. 520.) In applying these guiding principles we think it wise to take notice of the fact that the construction of a major modern expressway, from its initial phases until completion, may require a number of years, and that in order to properly plan and carry out this construction it is necessary to acquire the needed land some time in advance. Such land acquired in advance of actual physical construction, then, simply by virtue of its location and public ownership is in a very real sense "in the actual process of development and adaptation" for use by the public, for indeed, its eventual use as part of a completed highway may necessarily depend on its simply being available in an essentially dormant state for some period of time. Here, there was evidence that land

was condemned for construction of a massive highway project and, within a reasonable time, was used as a completed part of that project. In such a situation the trial court is fully justified in making the inference that from the time the condemnor acquired possession of the property until its full development for highway purposes, that property was in the natural and necessary course of "development and adaptation" for highway use. We then find that the Registrar has sustained his burden of proving that the subject property was "used exclusively for public purposes" within the meaning of section 19.9 of the Revenue Act. The tax exempt status of the property relates back to the time of the filing of the petition to condemn. See *Board of Junior College District 504 v. Carey* (1969), 43 Ill. 2d 82, 250 N.E.2d 644; *In re Application of County Collector* (1973), 13 Ill. App. 3d 927, 301 N.E.2d 344.

Appellant relies heavily to the contrary on *Skil Corp. v. Korzen* (1965), 32 Ill. 2d 249, 204 N.E.2d 738. In *Skil Corp.*, the County of Cook had condemned in 1954 certain property intended for use in construction of an expressway. In 1960, however, the county conveyed the property to appellant, a private corporation. The corporation sought to enjoin collection of the taxes for the years 1954 through 1960, arguing that the property had been exempt from taxation during those years. At trial, no evidence whatsoever was offered as to the use to which the property had been put while owned by the county. Despite this, the trial court granted the injunction, finding a tax exemption, under section 19.9 of the Revenue Act, based *solely* on the county's ownership of the property. On appeal to the Illinois Supreme Court, appellant sought to argue for the first time that the required element of public use could simply be inferred from the condemnation and continued public ownership during the period in question. The court reversed, finding that the corporation had failed to prove the exempt status of the property. *Skil Corp.*, however, is clearly distinguishable from the present case. In *Skil Corp.*, absolutely no evidence was offered to show that the land had at any time been used as an expressway. Further, the court found that the fact that the property was reconveyed to a private corporation after six years tended strongly to negate the inference that it was used as a highway in the intervening period. Neither of these features, on which the court in *Skil Corp.* placed heavy emphasis, is present in the case before us.

■■ Appellant further contends that even if the subject property would otherwise have been exempt from taxation in 1969, this exemption was precluded by the county's failure to file a certificate of exemption with the assessor, pursuant to section 19 of the Revenue Act (Ill. Rev. Stat. 1967, ch. 120, par. 500). Section 19, in pertinent part, reads:

> "All property described in Section 19.1 through 19.24 to the extent therein limited, is exempt from taxation. However, it is the

duty of the title holder or the owner of the beneficial interest of any property located in a county and which is exempt from taxation under any provisions of this Act, except Section 19.4, to file with the county assessor, or supervisor of assessments, as the case may be, on or before January 31 of each year, a certificate stating whether there has been any change in the ownership or use of such property or the status of the owner-resident * * * as of January 1 of that year. If there has been such a change, the nature of this change shall be stated in the certificate. Failure to file such a certificate shall, in the discretion of the assessor, or supervisor of assessments, constitute cause to terminate the exemption from taxation of that property, notwithstanding any other provision of this Act."

We do not deny that this section gives the assessor the authority, where no certificate is filed, to assess for taxes property which in the previous year was not assessed. However, it does not serve to validate the continued taxation of exempt property based solely on a mistaken belief that the property never became exempt. The discretion given the assessor is simply that to terminate a recognized exemption, not to fail ever to recognize, for whatever reason, a valid tax exemption. (*Cf. People ex rel. Redfern v. Hopewell Farms* (1972), 9 Ill. App. 3d 16, 219 N.E.2d 288.) By continuing to assess the property during the years subsequent to the condemnation proceeding, the assessor did not exercise his discretion to "terminate the exemption from taxation" of the subject property. We find this logic to be especially compelling in view of the fact that under the present circumstances a termination of the tax exemption would in all probability have had the effect of divesting the county of its interest in property of substantial value. We do not think that section 19 of the Revenue Act was intended to empower the assessor to inadvertently cause such a result. In a similar situation the applicability of the "termination" provision of section 19 of the Revenue Act was denied. See *In Re Application of County Treasurer* (1972), 4 Ill. App. 3d 243, 280 N.E.2d 761.

■■ We then come to the conclusion that the property was not subject to taxation in the year 1969. Turning to the effect of this exempt status on the subsequent tax proceedings, we find first that the judgment and order of sale rendered against the property in December 1970 was void. The county collector's application for a judgment and order of sale is a special statutory proceeding created by the Revenue Act of 1939, as amended. The trial court functions pursuant to special statutory jurisdiction granted in the Revenue Act. (*La Salle National Bank v. Hoffman* (1971), 1 Ill. App. 3d 470, 274 N.E.2d 640.) In order for the court to invoke this statutory jurisdiction, the taxes on the subject property must

be delinquent. (*Stein v. Olsen* (1975), 26 Ill. App. 3d 858, 326 N.E.2d 176.) Where the allegedly delinquent taxes were paid, or where the property was exempt from taxation, the court lacks jurisdiction over the property, and a judgment and order of sale against that property is void. Thus, section 270 of the Revenue Act (Ill. Rev. Stat. 1969, ch. 120, par. 751) reads in pertinent part:

"[A]ny judgment for the sale of real estate for delinquent taxes, * * * shall estop all parties from raising any objections thereto, or to a tax title thereon, which existed at or before the rendition of such judgment or decree, and could have been presented as a defense to the application for such judgment in the court wherein the same was rendered, and as to all such questions, the judgment itself is conclusive evidence of its regularity and validity in all collateral proceedings, *except in cases where the tax or special assessments have been paid or the real estate was exempt from general taxes under this Act or was not subject to special assessment.*" (Emphasis added.)

It follows necessarily from this that the tax deed order, issued pursuant to the judgment and order of sale, was also void for want of jurisdiction. The jurisdiction of the court to enter the tax deed order is simply that retained for the purpose of making necessary orders supplemental to the original judgment and order of sale. *Smith v. D.R.G. Inc.* (1976), 63 Ill. 2d 31, 344 N.E.2d 468; *Urban v. Lois, Inc.* (1963), 29 Ill. 2d 542, 194 N.E.2d 294; *Cherin v. R. & C. Co.* (1957), 11 Ill. 2d 447, 143 N.E.2d 235.

Appellant contends, however, that under section 266 of the Revenue Act (Ill. Rev. Stat. 1973, ch. 120, par. 747) any such collateral attack on the *tax deed order* as the registrar seeks to make is precluded. Section 266, as herein relevant, reads:

"Tax deeds issued pursuant to this Section are incontestable except by appeal from the order of the court directing the county clerk to issue the tax deed. However, relief from such order may be had under Section 72 of the 'Civil Practice Act' * * *."

Since no appeal was taken from the tax deed order, nor any petition filed pursuant to section 72 of the Civil Practice Act, appellant urges that section 266 of the Revenue Act is conclusive of this appeal. We cannot agree. Section 266 of the Revenue Act does not preclude any form of collateral attack on a tax deed order rendered without jurisdiction over the property. As the court said in *Shapiro v. Hruby*:

"By its enactment of section 266 of the Revenue Act (Ill. Rev. Stat. 1959, chap. 120, par. 747,) the legislature intended to render tax titles incontestable except by direct attack, unless the circumstances are such as to warrant the application of section 72

of the Civil Practice Act, (Ill. Rev. Stat. 1959, chap. 110, par. 72,) *or unless the order directing the issuance of deed was utterly void. (Southmoor Bank and Trust Co. v. Willis,* 15 Ill. 2d 388; *Cherin v. The R. & C. Company,* 11 Ill. 2d 447.)" (Emphasis added.) 21 Ill. 2d 353, 358, 172 N.E.2d 775, 778. See also *Stanley v. Bank of Marion* (1961), 23 Ill. 2d 414, 178 N.E.2d 367; *Farlow v. Oliver* (1963), 29 Ill. 2d 493, 194 N.E.2d 262.

■■ The cases cited by appellant in support of her interpretation of section 266 are inapposite and unconvincing. Rather than concerning the effect of a jurisdictional defect in a tax deed proceeding, they deal with the failure to satisfy certain prerequisites to the issuance of a tax deed set forth in sections 263 and 266 of the Revenue Act. In each of appellant's cases, the court, upon a finding of compliance with these prerequisites, issued a tax deed order. An interested party then filed a petition under section 72 of the Civil Practice Act, seeking relief from the tax deed order on grounds that the prerequisites had not in fact been fully satisfied. *Southmoor Bank & Trust Co. v. Willis* (1958), 15 Ill. 2d 388, 155 N.E.2d 308, concerned the issue of whether the tax sale purchaser had paid all delinquent taxes on the property; *Urban v. Lois, Inc.* (1963), 29 Ill. 2d 542, 194 N.E.2d 294, and *Zeve v. Levy* (1967), 37 Ill. 2d 404, 226 N.E.2d 620, concerned the question of proper notice to parties interested in the tax deed proceedings. These cases stand for the proposition that, absent fraud, failure to comply with the prerequisites for a tax deed order set forth in Sections 263 and 266 of the Revenue Act does not constitute grounds for relief under section 72 of the Civil Practice Act. However, as explicitly recognized in these and other cases, such failure does not create a jurisdictional defect in the tax proceedings. As the court said in *Smith v. D.R.G. Inc.*:

" 'Once acquired the county court retains jurisdiction to make all necessary findings and enter all necessary orders supplemental to the original tax sale.' (*Urban v. Lois, Inc.,* 29 Ill. 2d 542, 546; see also *Nix v. Smith,* 32 Ill. 2d 465.) Thus, the trial court had jurisdiction and, consequently, authority to [erroneously] find that all notices required had been given and to direct that a tax deed issue. (*Urban v. Lois, Inc.,* 29 Ill. 2d 542, 546; *Shapiro v. Hruby,* 21 Ill. 2d 353, 358; *Cherin v. R. & C. Co.,* 11 Ill. 2d 447, 454-55.) The determination of whether a party has been given the notice required under section 263 goes to whether the court should order the tax deed to issue and not to whether the court has jurisdiction in the proceeding. (See generally *Dahlke v. Hawthorne, Lane & Co.,* 36 Ill. 2d 241; *Zeve v. Levy,* 37 Ill. 2d 404.) A court should not direct the county clerk to issue a tax deed until it is satisfied that the

requirements of the Revenue Act have been met. Ill. Rev. Stat. 1971, ch. 120, pars. 744, 747; *cf. Young v. Madden,* 20 Ill. 2d 506." (63 Ill. 2d 31, 35-36, 344 N.E.2d 468, 470.)

Hence, these cases can in no sense be said to illustrate that a tax deed order rendered without jurisdiction is not subject to collateral attack, under section 72 of the Civil Practice Act or otherwise. Moreover, the very cases cited by appellant give clear recognition to the fact that a tax deed order, like any other order, judgment, or decree of a court, must rest upon proper jurisdiction, and that any limitation on the availability of relief from the order is squarely premised on the existence of such jurisdiction. The language of *Urban v. Lois, Inc.* is typical:

"We turn first to the basic question of jurisdiction and the office of section 72. We think it clear that the entire tax-sale proceeding is one *in rem* rather than *in personam.* (*People ex rel. Astle v. Chicago and Eastern Illinois Railway Co.* 315 Ill. 536, 539; *People ex rel. Thaxton v. Coal Belt Electric Railway Co.* 311 Ill. 29, 33.) It is the jurisdiction over the land itself, acquired in the original application for judgment and order of sale that gives to the county court the power to act. (*Shapiro v. Hruby,* 21 Ill. 2d 353, 358; *Cherin v. The R. & C. Company,* 11 Ill. 2d 447, 454.) Once acquired the county court retains jurisdiction to make all necessary findings and enter all necessary orders supplemental to the original tax sale. We, therefore, hold that the county court had jurisdiction to enter its order of December 3, 1962, finding all notices required by law had been given and directing the issuance of tax deeds to Lois, Inc. (*Cherin v. The R. & C. Company,* 11 Ill. 2d 447; *People v. Altman,* 9 Ill. 2d 277.) Such order could thereafter be attacked only by direct appeal or by appropriate proceedings under section 72 of the Civil Practice Act." 29 Ill. 2d 542, 546-47, 194 N.E.2d 294, 296.

The tax deed order, being rendered concerning land over which the court had no jurisdiction, was void. It is generally true that an order or judgment rendered without jurisdiction is subject to collateral attack by any party in the context of any proceeding in which the validity of that order or judgment later becomes relevant. (*People v. Miller* (1930), 339 Ill. 573, 171 N.E. 672.) In an effort to avoid the application of this rule, appellant raises two final arguments.

■■ First, appellant contends that the registrar may not collaterally attack the tax deed order, since he was served with notice of and thereby made a party to the tax deed proceeding. It is argued that the tax deed order represents an adjudication that taxes on the subject property had been delinquent, and that this adjudication, to which the registrar was a party, is binding on the registrar as *res judicata.* However, no adjudication

can operate as *res judicata* unless it is rendered by a court having proper jurisdiction. This elemental truth is evidence even in appellant's own statement of the principle invoked, quoted from *Gillies v. Little Vermilon Special Drainage District* (1948), 401 Ill. 344, 81 N.E.2d 916:

> "* * * [T]he principle of *res judicata* simply means that where a question has been directly an issue and decided *by a court of competent jurisdiction*, the issue cannot again be litigated in a future action between the same parties or their successors in interest, either in the same court or any court of concurrent jurisdiction." (Emphasis added.) (401 Ill. 344, 349, 81 N.E.2d 916, 919.)

We have found that the tax deed order in the present case was entered without proper jurisdiction. Hence, the tax deed order may not operate as *res judicata.*

With some benefit of doubt, it might be said that appellant here seeks in reality to argue that despite all this, the registrar, by virtue of his "presence" in the tax deed proceeding, has *waived* his right to later raise the court's lack of jurisdiction. Such an argument, however, must as well fail. As noted, the circuit court in tax deed proceedings functions pursuant to special statutory jurisdiction granted in the Revenue Act. Its authority to render judgments is in this respect no different from that of a court of limited and special jurisdiction. (*Gold v. Illinois Commerce Com.* (1943), 383 Ill. 11, 48 N.E.2d 391.) Such jurisdiction cannot be conferred upon the court by the parties, nor is it waived by one's presence in the proceeding without objection. The registrar may collaterally attack a tax deed order rendered without jurisdiction. (*Stein v. Olsen* (1975), 26 Ill. App. 3d 858, 326 N.E.2d 176.) Appellant's reliance on *Large v. Lyons* (1975), 31 Ill. App. 3d 1076, 335 N.E.2d 524, is clearly misplaced. In *Large*, a collateral attack on a tax deed order failed. However, this court's logic was simply that because the subject property had not been, as alleged, tax exempt, the tax deed order was rendered with proper jurisdiction.

Secondly, appellant contends that her interest in the subject property may not be collaterally attacked, since she is a *bona fide* purchaser in reliance on a court order which was valid on its face. It has often been held that where the rights of innocent third parties have attached, a judgment cannot be attacked, even for alleged jurisdictional defects, if those defects do not appear on the face of the record. (*Janove v. Bacon* (1955), 6 Ill. 2d 245, 128 N.E.2d 706; *Greenwald v. McCarthy* (1948), 402 Ill. 135, 83 N.E.2d 491; see also Ill. Rev. Stat. 1973, ch. 110, par. 72(5).) We agree that the judgment and order of sale of December 1970, although in fact rendered without jurisdiction, was on its face valid. However, we find that appellant does not qualify as a *bona fide* purchaser for purposes of applying the above rule.

■■ The relevant facts as set forth in appellant's petition for a rule to show cause are as follows. Interstate first learned that there was an expressway ramp on the subject property on or about July 17, 1973. This knowledge was then communicated to appellant. After re-examination of the title in an attempt to reconcile this knowledge with the certificate of title showing Margaret Talcott to be the sole owner, Interstate and appellant were assured by the chief examiner of Torrens Titles that the certificate of title would be controlling. In reliance on the certificate of title and the chief examiner's statement, Interstate continued with the proceedings, and appellant eventually purchased Interstate's certificate of purchase. It is clear then that for some time prior to November 23, 1973, when appellant purchased the certificate of purchase, she knew that an expressway ramp was located on the subject property. One having knowledge of facts which would put a reasonable man on inquiry is chargeable with knowledge of other facts which would have been discovered on diligent inquiry. (*Smith v. Grubb* (1949), 402 Ill. 451, 84 N.E.2d 421; *German-American National Bank v. Martin* (1917), 277 Ill. 629, 115 N.E.2d 721.) Although the affidavit attached to appellant's application for a tax deed order, subscribed and sworn before appellant, recited *inter alia* that a search had been made of the appropriate records of the *clerk of the circuit court of Cook County*, it is clear that a proper search of those records was not made. Such a search would surely have revealed the fact that a final judgment fixing compensation in a condemnation proceeding against the subject property had been entered on September 15, 1967. With this knowledge, appellant could have easily discovered that the award of compensation had also been duly deposited with the county treasurer.

We then find that appellant knew, or was properly chargeable with knowledge of the judgment of compensation, the deposit of the award, and the subsequent use of the property as a public highway. While such knowledge of a prior unregistered interest would not, absent fraud, be sufficient to *subordinate* appellant's interest in the property to that of the county under section 42 of the Torrens Act (Ill. Rev. Stat. 1973, ch. 30, par. 86), it would apprise the appellant of a strong likelihood that the court lacked jurisdiction to render a judgment and order of sale against the property for the 1969 taxes. Just as a purchaser is not entitled to rely on a judicial proceeding the record of which evinces a lack of jurisdiction, one who personally has good reason to believe that a court lacked jurisdiction to render its judgment cannot later stand on a claim that such lack of jurisdiction did not appear of record. The registrar is not precluded from collaterally attacking the tax deed order.

We do not by this holding in any way impair the merchantability of titles passing under a court order, decree, or judgment. We recognize

fully the importance of assuring that a *bona fide* purchaser may rely on the facial validity of judicial proceedings which form a link in his chain of title. However, a purchaser with knowledge of facts that would strongly suggest the invalidity of those proceedings is not a *bona fide* purchaser under the rule of *Greenwald v. McCarthy*. He should not be shielded from the effects of otherwise appropriate collateral attacks.

Accordingly, the order of the Circuit Court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.