JEANETTE GLASER, Plaintiff-Appellee, v. JOHN J. KAZAK, JR., Defendant-Appellant.

First District (5th Division)   No. 86—0565

Opinion filed July 8, 1988.

Louis E. Neuendorf and James G. Groat, both of Louis E. Neuendorf & Associates, of Sandwich, and John J. Kazak, Jr., of Aurora, *pro se*, for appellant.

John Scott Hoff and John W. Harrington, both of Lapin, Hoff, Spangler & Greenberg, of Chicago, for appellee.

JUSTICE PINCHAM delivered the opinion of the court:

Plaintiff, Jeanette Glaser, filed a foreclosure complaint against the defendant, John J. Kazak, Jr. The chattel involved and owned by defendant was a 1940 Boeing Stearman airplane, Model A75N1, which bore Federal Aviation Administration Registration No. N—265 HC. During a windstorm the aircraft was blown from the Rochelle Airport, where it was tacked down and stored, onto plaintiff's adjacent farmland. The defendant filed an answer and a counterclaim against the plaintiff and a third-party complaint against the third-party defendant, Air Wrecks, the company which plaintiff hired to remove, transport and store the aircraft miles away in Chicago. Following a bench trial, the trial court entered judgment for the plaintiff in the amount of $14,417.20 and ordered a sheriff's sale of the aircraft to partially satisfy the personal judgment rendered against the defendant. The defendant appeals. We reverse.

The issues presented for review are (1) whether the trial court properly found that a storage lien was created against the defendant's aircraft pursuant to "An Act for the better protection of any person, firm, or corporation expending labor, skill, or materials ***" (Ill. Rev. Stat. 1983, ch. 82, par. 40) (Illinois Chattel Lien Act); (2) whether the plaintiff converted defendant's aircraft; and (3) whether the personal judgment entered against the defendant was contrary to

the provisions of the Illinois Chattel Lien Act and against the manifest weight of evidence.

On April 1, 1982, a windstorm blew defendant's 1940 Boeing Stearman biplane off the Rochelle Airport, where it was kept, onto adjacent farmland which was rented by the plaintiff.

On May 3, 1982, the defendant made two phone calls to the plaintiff's residence. In the first phone call the defendant spoke to the plaintiff. During the second phone call defendant spoke to plaintiff's husband. It appears from the record that plaintiff's husband, who died September 27, 1982, gave the defendant permission to leave the aircraft on plaintiff's farmland for an indefinite period of time.

Because of the death of her husband, plaintiff decided to cease farming. Plaintiff was required by the owner of the farmland to return the land in the same condition in which it was at the beginning of the leasehold. Therefore, according to the plaintiff on January 23, 1983, after giving notice to the Ogle County sheriff's department, plaintiff had the aircraft removed from her leased farmland by the third-party defendant, Air Wrecks, a professional aircraft salvage and storage company located in Chicago, Illinois, which removed the aircraft on that date. About two months later in March of 1983, plaintiff filed an *in rem* action in the Ogle County court seeking to have the aircraft declared "lost or abandoned" property and to have the title to the aircraft awarded to her. On April 7, 1983, defendant filed a claim in the Ogle County circuit court alleging his ownership of the aircraft. On April 8, 1983, plaintiff sent the defendant a letter requesting that he claim his aircraft and pay the removal expenses involved in removing the aircraft from the farmland in Ogle County to Chicago and the storage expenses in Chicago. The defendant refused. On April 27, 1983, plaintiff sent another letter requesting the defendant claim his aircraft and pay the storage and removal expenses. The defendant did not respond to plaintiff's April 27, 1983, letter.

On August 6, 1983, prior to the resolution of the Ogle County action, plaintiff filed a notice of storage lien against the defendant in Cook County. Subsequently, the Ogle County trial court held that the aircraft was not "lost or abandoned" but belonged to the defendant. On July 5, 1984, the defendant filed a denial of the storage lien.

On July 10, 1984, the plaintiff sent a letter to the defendant again requesting that he claim his aircraft and pay the costs of the storage lien. On July 16, 1984, defendant's counsel by letter informed the plaintiff that "Mr. Kazak has been financially in a very tight position and has not been able to come up with the funds to

cover his airplane." Following the receipt of this letter plaintiff filed the instant complaint for foreclosure.[1]

On May 30, 1985, the defendant filed an answer and a counter-claim against the plaintiff praying for the trial court to enter judgment in his favor and against the plaintiff for possession of the aircraft, damages for the wrongful taking, detention of and physical damage to the aircraft in a total sum not less than $20,000; punitive damages in an amount not less than $20,000; plus reasonable attorney fees and costs. On May 30, 1985, the defendant also filed a third-party complaint against Air Wrecks praying for possession of the aircraft.

---

[1]In her complaint plaintiff alleged:

"1. In or around March, 1982, a certain 1940 Stearman N3N byplane aircraft, *** came onto the property of plaintiff without plaintiff's permission or consent.

2. The above referred aircraft remained on the property until in or around January, 1983, at which time plaintiff had said aircraft removed from her property and placed into storage.

3. The above-referred aircraft was placed in storage in Cook County, Illinois upon removal and has remained therein to date.

4. From March, 1982, through the present date, by virtue of the above, a Storage Lien and Warehouse's Lien has existed and does exist in favor of plaintiff and against defendant, as purported owner of the above-referred aircraft pursuant to 82 I.R.S., Section 40 et seq.

5. Pursuant to statutory authority, plaintiff recorded her Notice of Storage Lien, ***.

6. Plaintiff thereafter requested the Sheriff of Cook County, where the above-referred aircraft is presently located, to initiate foreclosure and sale proceedings in accordance with the above-referred statute, Plaintiff performing all requirements therein.

7. Defendant thereafter filed what purports to be a verified denial of a lien within the time specified by statute ***.

8. Plaintiff has made numerous attempts to resolve this matter with Defendant as the purported owner of the above-referred aircraft, but Defendant has failed and refused and continues to fail and refuse to satisfy Plaintiff's lien on said property.

9. As of July 16, 1984, the date at which levy sale of the property was to have been held by the Sheriff of Cook County, Illinois, there was due and owing to Plaintiff pursuant to her lien the sum of $8,446.20 after all just set-offs and credits; a copy of all paid bills therefore being in the possession of the Sheriff of Cook County, Illinois pursuant to statute.

WHEREFORE, Plaintiff, JEANETTE M. GLASER, prays for judgment of this Court as follows:

A. That plaintiff's lien rights be upheld.

B. That a judgment for foreclosure and sale of the above-referred aircraft be entered; and

C. Such other relief as this Court may deem necessary."

On September 23, 1985, the trial court entered the following order:[2]

"NOW THEREFORE, the Court Orders as follows:

A. Third-party defendant AIR WRECKS is dismissed, on the merits, with prejudice;

B. Jenette [sic] Glaser is awarded judgment against John J. Kazak in the amount of $14,417.20, and shall have a lien for such amount against the aircraft;

C. The aircraft is to be sold at a Sheriff's auction within 60 days of the date of the entry of this Order. Any consideration received from said sale is to be paid to Jenette [sic] Glaser, and any amount received by Jenette [sic] Glaser from said sale shall be applied to reduce the personal judgment hereby awarded to Jenette [sic] Glaser against John J. Kazak, Jr.

D. All substantive issues in this case are hereby disposed of, and there is no just reason for delaying enforcement or appeal of this final order."

The defendant argues that no statutory lien was acquired pursuant to the Illinois Chattel Lien Act because the storage was not requested by the owner nor was it at the request of an authorized agent of the owner. The plaintiff argues that she was an implied agent of the defendant and that a storage lien was created against the defendant's aircraft pursuant to the Illinois Chattel Lien Act.

The Illinois Chattel Lien Act (Ill. Rev. Stat. 1983, ch. 82, par. 40) provides:

"Every person, firm or corporation who has expended labor,

---

[2]Preceding the order the trial court entered the following findings:

"(1) The law and facts relevant to this case are not clear cut and are very complicated.

(2) There was no conversion of the subject aircraft by Jenette [sic] Glaser.

(3) For the purpose of this case John J. Kazak was in fact the owner of the subject aircraft.

(4) On or about May 3, 1982, Jenette [sic] Glaser had no particular knowledge regarding the subject aircraft except that it was on her property.

(5) After May 3, 1982, Jenette [sic] Glaser had no particular knowledge regarding the subject aircraft except that it was on her property.

(6) Jenette [sic] Glaser was never on formal notice of John J. Kazak's ownership interest and/or intentions to retain ownership of the subject aircraft.

(7) The subject aircraft was on Jenette [sic] Glaser's real property without permission.

(8) The subject aircraft was in fact trespassing on Jenette [sic] Glaser's real property.

skill or materials upon any chattel, or has *furnished storage for said chattel,* at the *request of its owner, reputed owner, or authorized agent of the owner, or lawful possessor* thereof, shall have a lien upon such chattel beginning on the date of the commencement of such expenditure of labor, skill and materials or of such storage for the contract price for all such expenditure of labor, skill or materials, or for all such storage, or in the absence of such contract price, for the reasonable worth of such expenditure of labor, skill and materials, or of such storage, for a period of one year from and after the completion of such expenditure of labor, skill or materials, or of such \*\*\* chattel has been surrendered to the owner, or lawful possessor thereof." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 82, par. 40.

In a case analogous to the instant one, *Kunde v. Biddle* (1976), 41 Ill. App. 3d 223, 353 N.E.2d 410, the defendant towing company's right to assess towing and storage costs and obtain a lien against wrongfully parked automobiles removed from privately owned parking lots without the lawful owners' permission was challenged by three plaintiffs whose cars had been removed and stored by defendant. The defendant towing company argued that when the automobile owners placed their vehicles on private property, they put the owners of the privately owned property in lawful possession of the vehicles and vested them with the right to have services performed in accordance with section 1 of the Illinois Chattel Lien Act (Ill.

---

(9) When Jenette [*sic*] Glaser had the subject aircraft placed in storage at Air Wrecks, she was functioning as an implied agent by operation of law for John J. Kazak and her actions were reasonable in that capacity.

(10) The damages to the fence of Jenette [*sic*] Glaser caused by the trespass was $15.00;

(11) The damages to the crops of Jenette [*sic*] Glaser caused by the trespass was $15.00;

(12) The additional damages to the property of Jenette [*sic*] Glaser as a result of the trespass was [*sic*] $100.00 per month for 7½ months, or $750.00;

(13) The cost of the removal and dismantling of the subject aircraft from the property of Jenette [*sic*] Glaser was $3,500.00;

(14) The expenses incurred by Jenette [*sic*] Glaser for storage charges (to AIR WRECKS) were $9,250.00;

(15) Additional expenses incurred by Jenette [*sic*] Glaser as a result of the trespass, not including attorney's fees were $852.20;

(16) The present value of aircraft is $1,500.00;

(17) There is no factual basis for the award of exemplary or punitive damages to any party \*\*\*."

Rev. Stat. 1973, ch. 82, par. 40), and section 1 of "An Act concerning liens for labor, services, skill or materials furnished upon or storage furnished for chattels" (Ill. Rev. Stat. 1973, ch. 82, par. 47a) (the Act), which statutes afford a statutory lien on a chattel for labor expended on that chattel, when the labor is expended at the request of the owner, authorized agent of the owner or lawful possessor of the chattel.

The court in *Kunde*, in rejecting defendant's argument, stated:

"There appears to be no case which has defined the term 'lawful possessor' in the context of these statutory provisions. *A construction that the lot owners were lawful possessors would be a strained interpretation and application of the statutory lien provisions. The lot owners cannot be considered agents of the plaintiffs* [vehicle owners] *since they did not act in a representational capacity, nor were they under the control of plaintiffs* [citation], *nor were they bailees of the automobiles since they did not accept control over the cars.* [Citation.] While the lot owners may have had, as plaintiffs concede, the right to have the vehicles removed from their property, they cite no authority for the proposition that they acquired possessory rights in the vehicles because they were wrongfully parked on their property. A mere possessor has no authority to create a lien against an automobile without the owner's consent. [Citation.]" (Emphasis added.) *Kunde,* 41 Ill. App. 3d at 225-26.

Similarly, in *People ex rel. Carey v. Lincoln Towing Service, Inc.* (1977), 54 Ill. App. 3d 61, 369 N.E.2d 94, the defendant towing company's rights to assess towing and storage costs and obtain a lien against wrongfully parked automobiles removed from privately owned parking lots without the lawful owners' permission was also challenged by three automobile owners and the State's Attorney of Cook County. The defendant towing company argued in *Lincoln Towing,* similar to the defendant's argument in *Kunde,* that when the automobile owners placed their vehicles on private property, they put the owners of the property in the lawful possession of the vehicles and vested them with the right to have services performed in accordance with section 1 of the Illinois Chattel Lien Act (Ill. Rev. Stat. 1973, ch. 82, par. 40), and section 1 of the Act (Ill. Rev. Stat. 1973, ch. 82, par. 47a). Citing *Kunde v. Biddle* (1976), 41 Ill. App. 3d 223, the court in *Lincoln Towing* rejected defendant's argument, holding that *Lincoln Towing* had no valid possessory lien on the vehicles it towed.

Likewise, in the case at bar, plaintiff, Jeanette Glaser, argues, analogous to the defendants' argument in *Kunde* and *Lincoln Towing*, that when the defendant's aircraft blew onto plaintiff's farmland, the defendant put the plaintiff in lawful possession of the aircraft and vested plaintiff with the right to have services performed in accordance with section 1 of the Illinois Chattel Lien Act (Ill. Rev. Stat. 1983, ch. 82, par. 40).

As the courts did in *Kunde* and *Lincoln Towing*, we too reject plaintiff's argument. Jeanette Glaser cannot be considered defendant's agent because she did not act in a representational capacity, nor was she under the control of the defendant, nor was she the bailee of the aircraft since she did not accept control over the aircraft. The record established that plaintiff's deceased husband allowed defendant to leave his aircraft on the farmland for an indefinite period of time. While plaintiff may have had the right to have the aircraft removed from her farmland, she did not acquire possessory rights in the aircraft simply because it wrongfully remained on her farmland. A construction that the plaintiff was the lawful possessor of the aircraft would be a strained interpretation and application of the statutory lien provisions. *Kunde v. Biddle* (1976), 41 Ill. App. 3d 223, 353 N.E.2d 410.

■ Defendant next contends that plaintiff converted his aircraft. The essence of an action for conversion is the wrongful deprivation of property from the person entitled to possession. (*People ex rel. Carey v. Lincoln Towing Service, Inc.* (1977), 54 Ill. App. 3d 61, 369 N.E.2d 94; *Hobson's Truck Sales, Inc. v. Carroll Trucking, Inc.* (1971), 2 Ill. App. 3d 978, 276 N.E.2d 89.) A party claiming a conversion must show (1) an unauthorized and wrongful assumption of control, dominion, or ownership by a person over the personalty of another; (2) his right in the property; (3) his right to the immediate possession of the property, absolute and unconditional; and (4) a demand for possession thereof.

Since the plaintiff had no valid possessory lien on the aircraft, which she had removed from her farmland without the defendant's consent, her refusal to return the aircraft to the defendant until the storage charge was paid may be found to be an act of conversion.

■ Lastly, defendant contends the personal judgment entered against him is contrary to the provisions of the Illinois Chattel Lien Act and against the manifest weight of evidence. We agree.

A chattel lien confers no remedy for a deficiency judgment against the owner in the event a judicial sale fails to result in an amount sufficient to cover the lienholder's reasonable charges. (*Bull*

*v. Mitchell* (1983), 114 Ill. App. 3d 177, 448 N.E.2d 1016.) Since the defendant, in the case at bar, did not file a bond pursuant to section 6 of the Illinois Chattel Lien Act and since the plaintiff was not entitled to a chattel lien, we hold that the trial court's entry of a personal judgment against him cannot be sustained by the Illinois Chattel Lien Act.

Reversed and remanded.

MURRAY and SULLIVAN, JJ., concur.