**LESCHA MASCHINENFABRIK GmbH, a foreign corporation, and Societe Odo, a foreign corporation, Plaintiffs,**

**v.**

**GSC PROPERTIES, a real estate partnership, REM Management Company, an Illinois general partnership, Richard Panichi, Harold Hawkins, and Walter Bratkiv, Defendants.**

No. 87 C 4830.

United States District Court, N.D. Illinois, E.D.

July 28, 1989.

Stephen P. Bedell and Timothy A. French, Gardner, Carton & Douglas, Chicago, Ill., for plaintiffs.

---

James T. Laffey, Lapin, Hoff, Spangler & Greenberg, Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Plaintiffs, Lescha Maschinenfabrik GmbH ("Lescha"), a German corporation, and Societe Odo ("Odo"), a French corporation, complain against GSC Properties ("GSC"), an Illinois partnership, REM Management Co., an Illinois partnership, and the individual defendants (collectively "GSC" or the "defendants") for conversion, breach of constructive bailment, and unjust enrichment. Both sides have moved for summary judgment as to liability. The Magistrate has recommended that summary judgment as to liability be entered in favor of plaintiffs. Upon conducting a *de novo* review, pursuant to Fed.R.Civ.P. 72(b), the court, for the reasons set forth below, rejects the Report and Recommendation of the Magistrate and grants summary judgment in favor of defendants.

## FACTS

Lescha and Odo manufacture and sell outdoor power equipment and gramophones, respectively (collectively the "Goods"). Both Lescha and Odo stored Goods with Fischer Consultants International ("Fischer"), at 150 G. East St. Charles Road, Carol Stream, Illinois, (the "Premises"). Grochocinski Affidavit, Exhibit C to Plaintiffs' Memorandum in Support; Defendants' Response to Request to Admit # 15, Exhibit D to Plaintiffs' Memorandum in Support. Fischer leased the Premises from GSC. Defendants' Response to Request to Admit # 13. Lescha paid Fischer $351 per month in storage charges, Winter Dep. at 91, Exhibit G to Defendants' Response, while Odo, in lieu of monthly storage charges, agreed to pay Fischer a ten percent commission on any gramophone orders received. Odobez Deposition at 54–55, Exhibit H to Defendants' Response.

On November 20, 1985, GSC served Fischer with a five-day termination notice for the Premises, and on November 25, 1985, after Fischer failed to cure, terminated Fischer's lease for nonpayment of rent. Fischer, which also filed for bankruptcy on November 25, 1985, Amended Complaint ¶ 17, "abandoned"[1] the Premises, leaving behind the Goods, specifically 614 Lescha garden shredders and 145 Odo gramophones. Consequently, upon termination of Fischer's lease and Fischer's abandonment of the Premises, GSC assumed possession and control of the Premises and the Goods located on the Premises. Defendants' Response to Statement of Uncontroverted Facts ## 8–12; Defendants' Response to Plaintiffs' Request to Admit ## 18, 20.

On December 6, 1985, GSC inventoried the property left in the Premises. After storing the Goods for over a month, GSC scheduled an auction of the inventory, including the Goods, on January 17, 1986. GSC twice attempted, but was unable to contact a Fischer representative. Defendants' Statement of Uncontested Facts, ¶ 7. The individuals GSC contacted refused to place it in contact with Fischer representatives. GSC was not on Fischer's list of creditors and was not contacted by the bankruptcy trustee until after the auction. Defendants' Statement of Uncontested Facts, ¶¶ 5, 6.

GSC did not provide personal notice to either Odo or Lescha concerning the auction. GSC had never before had dealings with Lescha or Odo and did not know of plaintiffs' claims of ownership of the

---

**1.** When Fischer filed its petition in bankruptcy all of its assets became part of the bankruptcy estate. 11 U.S.C. § 541. Since Fischer filed a petition in bankruptcy prior to the expiration of the five day cure period, the lease technically was executory and subject to 11 U.S.C. § 365. Thus, the lease had not "terminated," but rather was an asset of the bankruptcy estate. Apparently, Fischer technically abandoned neither the Premises nor its contents. *See* 11 U.S.C. § 554.

Nevertheless, as the parties have done so, the court will use the terms "abandon" and "terminated." Moreover, because these issues were not argued by the parties, any continuing interest that Fischer may have had in the Premises, as a result of bankruptcy law (i.e. since the lease was still executory, Fischer was still a lessee rather than a former-lessee, therefore, the Goods were not technically trespassing on the Premises) is not relevant to this decision.

Goods. Defendants' Statement of Uncontested Facts, ¶¶ 1, 2. Neither Lescha nor Odo maintained an office in the United States. Defendants' Statement of Uncontested Facts, ¶¶ 8, 9. There is no indication as to how the containers in which the garden shredders were stored were labeled. The containers in which the gramophones were stored were not labeled with Odo's name or address. Defendants' Statement of Uncontested Facts, ¶ 11. Moreover, none of the Goods were labeled in such a way as to indicate that they were owned by other than Fischer. Defendants' Statement of Uncontested Facts, ¶ 10. Richard Panichi, a GSC general partner, filed an affidavit with the DuPage County, Illinois Circuit Court, stating that GSC did not know the identity of the owner of the goods remaining in the Premises. Defendants' Statement of Uncontested Facts, ¶ 14. Notice of the auction was published in the *Elmhurst Press*, a general circulation newspaper, on December 31, 1985, January 8, 1986, and January 15, 1986. Defendants' Statement of Uncontested Facts, ¶ 15.

The auction was conducted on January 17, 1986, with GSC the successful bidder for the Goods. No other bidders appeared. GSC's bid of $6,140 for the 614 shredders, and $2,900 for the 145 gramophones, was not in cash. Rather, GSC "bid in" the lien it had asserted against the Goods for storage charges. Subsequently, GSC sold the Lescha shredders for $14,200, but has not sold the gramophones. Panichi Dep. at 44–48, Exhibit B to Defendants' Response.

Fischer's trustee in bankruptcy has submitted an affidavit stating that based upon his examination of Fischer's records, which included certain of plaintiffs' brochures, "[t]hese documents provided sufficient information from which to determine the identity and location of the manufacturers of the property that remained on the St. Charles Rd. premises." Affidavit of David E. Grochocinski, ¶ 8.

## DISCUSSION

Lescha and Odo, upon learning of these events, filed their three count complaint alleging in Count I that GSC's sale of the Goods without their consent and without notice amounted to conversion, in Count II that GSC's sale of the Goods breached a constructive bailment created when Fischer abandoned the Premises leaving the Goods in GSC's possession, and in Count III that GSC has been unjustly enriched through the sale of the Goods.

GSC argues that, when it regained possession of the Premises abandoned by Fischer, it provided storage for the Goods. It asserts the right to a lien against the Goods under the Illinois chattel lien law, which provides that "[e]very person, firm, or corporation who has ... furnished storage for [any] chattel, at the request of its owner, reputed owner, or authorized agent of the owner, or lawful possessor thereof, shall have a lien upon such chattel...." Ill.Rev.Stat. ch. 82, ¶ 40. Thus, GSC concludes that its sale of the Goods constituted the enforcement of a valid chattel lien, under Ill.Rev.Stat. ch. 141, ¶ 3, which therefore amounted to neither a conversion, nor a breach of bailment.

The Magistrate concluded that, as a matter of law, GSC was not a "lawful possessor," of the Goods as that term is used in Ch. 82, ¶ 40. Having determined that GSC was not a lawful possessor of the Goods, the Magistrate found further that, as a matter of law, GSC had no right to create a lien against the Goods under Ch. 82, ¶ 40. Finally, because GSC had no right to create a lien against the Goods, the Magistrate concluded that GSC's sale of the Goods constituted conversion of the Goods. Although the Magistrate found that GSC was not a lawful possessor of the Goods, she did find that, as a matter of law, GSC was a gratuitous bailee of the Goods and breached the bailment.

Defendants have filed timely objections under Fed.R.Civ.P. 72(b). GSC has asserted no defense to plaintiffs' claims other than that its actions amounted to the proper enforcement of a valid statutory lien. Therefore, the issues before the court are whether, as a matter of law, GSC had a chattel lien on the Goods and, if so, wheth-

er, as a matter of law, the lien was properly enforced.

## SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A plaintiff cannot rest on mere allegations of a claim without any significant probative evidence which supports his complaint. *Id.;* see *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the nonmoving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.*

## GSC HAD A VALID LIEN ON THE GOODS

■ Ch. 82, ¶ 40 allows a lien where the claimant has furnished storage for a chattel "at the request of its owner, reputed owner, or authorized agent of the owner, or lawful possessor thereof." The Illinois Supreme Court has yet to determine a lessor's entitlement, under Ch. 82, ¶ 40, to a chattel lien for storage costs in property abandoned by a former lessee on commercial premises, where that property is owned by a third party and present on the commercial premises under a storage agreement between the former lessee and the third party, owner. Illinois Appellate Court decisions provide little guidance. The court determines that, if faced with the issue, *see Dellcar v. Hicks*, 685 F.Supp. 679, 681 (N.D.Ill.1988), the Illinois Supreme Court would hold that, under the facts of this case, a request that the commercial lessor provide storage for the property may be implied on behalf of either the former-lessee (the "lawful possessor") or the owner, or both, and that therefore the commercial lessor is entitled to a chattel lien in the property for storage costs under Ch. 82, ¶ 40.

The former-lessee, Fischer, was, prior to its abandonment of the Premises and the termination of its lease, in possession of the Goods under agreements with the plaintiffs for storage of the Goods. Thus, under Ch. 82, ¶ 40, Fischer, in the event either of the plaintiffs failed to abide by their agreements, could have created and enforced a chattel lien in the Goods. This conclusion leads to two questions. First, what was the operative effect of Fischer leaving the Goods in the Premises upon the termination of its lease? Second, what was GSC's relationship with the Goods when it regained possession of the Premises? These, in turn, lead to two relatively straight forward answers. Fischer, by leaving the Goods on the Premises impliedly requested its lessor, GSC, to provide storage for the Goods. Therefore, GSC, by providing storage for the Goods, was doing so at the request of a "lawful possessor," under Ch. 82, ¶ 40, and is entitled to assert a statutory lien against the Goods.

That plaintiffs, the owners, had no agreement with GSC does not preclude GSC from asserting a lien. Similarly, while GSC was lawfully in possession of the Goods, the determination of its status as a "lawful possessor," under Ch. 82, ¶ 40, is not relevant. It is enough, under Ch. 82, ¶ 40, that GSC provided storage for the Goods at the implied request of their lawful possessor, Fischer. Plaintiffs should not be in a "better" position as a result of Fischer's breach of the storage agreement.

In the alternative, the same result may be reached where the owner of stored property knows that the party with whom he

has a storage agreement is only a lessee of the premises. Then the owner of the stored property may be held to have impliedly consented to the lessor's storage of the property in the event the lessee loses possession of the premises and the property remains. While the lessor would not stand in the lessee's shoes with respect to the lessee's storage agreement with the owner of the stored property to the extent of enforcing the actual agreement, the lessor would be able to assert a lien under Ch. 82, ¶ 40 for actual storage costs.

The Illinois Appellate court decisions relied upon by the Magistrate in concluding that GSC was not entitled to a statutory lien are readily distinguishable. In *Glaser v. Kazak*, 173 Ill.App.3d 108, 122 Ill.Dec. 881, 527 N.E.2d 379 (1st Dist.1988), an aircraft was blown from an airport onto adjacent farmland. Eventually, the lessee of the farmland ("lessee") had the aircraft removed from her land and stored. The lessee then sought to assert a chattel lien on the aircraft for removal and storage costs. The court concluded that the lessee was not acting as the agent of the aircraft's owner, nor was she the bailee of the aircraft, since she did not accept control over it. While the lessee "may have had the right to have the aircraft removed from her farmland, she did not acquire possessory rights in the aircraft simply because it wrongfully remained on her farmland." 122 Ill.Dec. at 885, 527 N.E.2d at 383. As a mere possessor, the lessee could not create a lien against the aircraft without the owner's consent. *Id.*

*Glaser* differs from the instant case in two important respects. In *Glaser*, the aircraft was trespassing on the lessee's property *ab initio*. In the instant case, the Goods initially were lawfully brought onto the Premises under agreements between Fischer and the plaintiffs. In *Glaser*, the aircraft's entry onto the lessee's property and its "possession" by the lessee was fortuitous, without knowledge or consent of

the aircraft's owner. Here, Fischer, the lawful possessor of the Goods, knew that, when it allowed the Goods to remain on the Premises at the termination of the lease, they would come under the control of GSC.[2]

*People ex rel. Bernard Carey v. Lincoln Towing Service, Inc.*, 54 Ill.App.3d 61, 11 Ill.Dec. 640, 369 N.E.2d 94 (1st Dist.1977), and *Kunde v. Biddle*, 41 Ill.App.3d 223, 353 N.E.2d 410 (4th Dist.1976) are also distinguishable. *Lincoln Towing* and *Kunde* denied towing companies chattel liens for towing and storage charges against automobiles towed from parking lots where they had been unlawfully parked. Both courts held that the parking lot owners, upon whose request the automobiles were towed and stored were not "lawful possessors." 11 Ill.Dec. at 644–646, 369 N.E.2d at 98–100; 353 N.E.2d at 413. Again, in both *Lincoln Towing* and *Kunde*, the automobiles were trespassing, while, in the instant case, the Goods entered the Premises lawfully pursuant to agreements between the plaintiffs, owners, and the "lawful possessor," Fischer.

Moreover, *Lincoln Towing* and *Kunde* are no longer good law, having been "overruled" by the Illinois legislature. *See* Ill. Rev.Stat. ch. 82, ¶ 47a. Under Ch. 82, ¶ 47a, a person who, without authorization, parks a vehicle on private property impliedly consents both to the towing and storage of the vehicle and to the asserting of a lien against the vehicle to cover towing and storage charges. Ch. 82, ¶ 47a, while inapplicable to the instant case, is evidence of the legislature's approval of the expansion of circumstances under which statutory storage liens may be created through the use of the concept of an implied request or consent.

The fiction of implied consent is applied to supply a person's consent to an action which the person often does not desire to happen, but knows there is a strong likeli-

---

**2.** There is no evidence that plaintiffs knew or had notice of the fact that Fischer was merely leasing the Premises. If they had either, then the plaintiffs would be chargeable with knowledge of the fact that the Goods would come

under the control of the lessor, GSC, in the event Fischer lost possession of the Premises and would have impliedly requested that GSC provide storage for the Goods.

hood of happening. Under the circumstances of the instant case, application of the concept of implied consent is much less a fiction and more a reality than it is under the unauthorized parking scenario. Under Ch. 82, ¶ 47a, where a person parks an automobile on private property without authorization, implied consent is applied to supply the automobile operator's consent to an action which he knows may happen, but does not desire to happen—the towing of his car. Where an owner of personal property enters into an agreement for the storage of that property with the lessee of the premises upon which the personal property is to be stored, both the owner of the personal property and the lessee may not know, but presumably would desire, that, in the event the lessee loses possession of the premises, the lessor will continue to store the property for an intermediate period prior to the property owner obtaining knowledge or notice of the lessee's loss of possession.

The practical effect of a contrary ruling adopting the Magistrate's Ruling and Recommendation would be to place GSC, and all other commerical lessors, in a "catch-22" situation. On one hand they are denied a chattel lien as a "mere possessor", while, on the other hand, once a gratuitous bailee, they cannot simply discard the subject of the bailment. Where the lessee leaves property which is large, this might make the premises impossible to relet or, at least, reduce that portion of the premises from which the lessor can derive a benefit. Moreover, to the extent a lessor could avoid a gratuitous bailment by immediately refusing to exercise control over the property, see Kirby v. City Bank & Trust Co., 82 Ill.App.3d 1113, 38 Ill.Dec. 489, 403 N.E.2d 720 (1st Dist.1980) (essential element of bailment is bailee's acceptance of control), denying a storage lien would encourage repossessing lessors to engage in a wasteful commercial practice even more damaging to property owners—immediately discarding the property.

Restriction of the application of implied consent to instances in which property is stored on leased commercial premises will ensure that the use of implied consent is not expanded to the extent that statutory liens displace gratuitous bailments. Similarly, it must be emphasized that, while the court holds that the lessor has the right to assert a lien for storage of property remaining on the premises, the lessor has no duty to provide storage.

## GSC PROPERLY ENFORCED ITS LIEN

■ Concluding that GSC had a chattel lien in the Goods under Ch. 82, ¶ 40, requires an examination of whether, as a matter of law, GSC properly enforced its lien under Ill.Rev.Stat. ch. 141, ¶ 3. Ch. 141, ¶ 3 requires, among other things, that the lienor give personal notice to the owner of the property, if known, against which a chattel lien is asserted at least 10 days prior to the enforcement of the lien through public sale. GSC, lacking knowledge of the identities of the Goods' owners did not send personal notice to plaintiffs. GSC will be charged with the knowledge of plaintiffs' identity, if it had knowledge of facts which upon diligent inquiry would have led to knowledge of plaintiffs' identity as the owners of the Goods. Burdash v. Olsen, 48 Ill.App.3d 572, 6 Ill.Dec. 415, 362 N.E.2d 1335 (1st Dist.1977). If GSC had constructive knowledge of the identity of the Goods' owners, then, having failed to send them personal notice of the sale, GSC would not have properly enforced its lien.

An examination of plaintiffs' Memorandum In Support Of Motion For Partial Summary Judgment As To Liability reveals that the basis for plaintiffs' assertion that it is entitled to summary judgment is an affidavit by Fischer's trustee in bankruptcy. It is largely upon the information in this affidavit that plaintiffs conclude that GSC is chargeable with knowledge of plaintiffs' identify and thus, by failing to send personal notice to plaintiffs, failed to comply with Ch. 141, ¶ 3. Essentially, the trustee concludes that certain of plaintiffs' brochures, which were in file cabinets on the Premises, contained information which upon further inquiry would have led to the Goods' manufacturers. Certainly, if plaintiffs' addresses were on their brochures, whether in English, French or German, and

defendant in fact had access to them, then defendants had knowledge of information which would, on further reasonable inquiry, have led to plaintiffs' identities. However, the affidavit fails to specifically state that defendants had access to Fischer's documents and records. Were the file cabinets in which they were contained unlocked? More importantly, the affidavit fails to specify exactly what information was contained on the brochures. Instead, there is simply the conclusion that "[t]hese documents provided sufficient information from which to determine the identity and location of the manufacturers of the property that remained on the St. Charles Road premises." Affidavit of David E. Grochinski, ¶ 8. Finally, ignoring the conclusory nature of this statement, that GSC may have had notice of the identity of the manufacturers of the Goods does not equate to notice of the identity of the owners of the Goods. That, for example, General Motors manufactured a certain Cadillac does not, standing alone, establish ownership of the Cadillac.

GSC properly enforced its lien. It did not have constructive knowledge of plaintiffs' identity as the owners of the Goods. GSC attempted to contact a representative of Fischer in order to determine the owner of the Goods. This is a diligent inquiry, given that GSC possessed no other information indicating the owners of the Goods.[3] No reasonable jury could conclude otherwise.

Accordingly, the court rejects the Magistrate's Report and Recommendation and grants summary judgment in favor of defendants.

IT IS SO ORDERED.

---

**3.** Plaintiffs have portrayed defendants as wrongdoers. Had Fischer or plaintiffs simply appropriately labeled the Goods as stored or held on consignment, with the name and address of the owners, all "difficulties" could have been avoided.