JANIVO HOLDING, B.V., Plaintiff,

v.

CONTINENTAL BANK, an Illinois Banking Association, and First Interstate Mortgage Company of Illinois, Defendants.

No. 91 C 7728.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 4, 1994.

Charles Louis Glick, Reuben L. Hedlund, Susan B. Silverman, Alex M. Liberman, Marion B. Adler, Edwin L. Durham, Hedlund, Hanley & John, Chicago, IL, Richard A. Edlin, Solovary & Edlin, New York City, for plaintiff.

James G. Hunter, Jr., Kenneth S. Goodsmith, Timothy B. Hardwicke, Gregory J. Zemanick, Latham & Watkins, Chicago, IL, for First Interstate.

Michael Rowe Feagley, Terri A. Mazur, Bennett W. Lasko, Dennis G. Friedman, Mayer, Brown & Platt, Chicago, IL, for Continental Bank.

### MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Defendants Continental Bank, an Illinois Banking Association ("Continental"), and First Interstate Mortgage Company of Illinois ("First Interstate") have jointly moved (1) to dismiss Counts I–IV and VI–VIII of plaintiff Janivo Holding, B.V.'s ("Janivo's") Second Amended Complaint ("Complaint"), FED.R.CIV.P. 12(b)(6); and (2) for summary judgment as to Count V, FED.R.CIV.P. 56. The Second Amended Complaint asserts eight counts, so the entirety of the Complaint is now before the court on one of the two motions.

### I. BACKGROUND

This diversity suit is brought by Janivo against defendants to recover what it alleges to be $31 million improperly obtained and retained by defendants. Defendants were co-construction lenders on a project to construct a building at 633 St. Clair Place, Chicago, spearheaded by the developer St. Clair Associates, the general partner of which was Marvin Romanek. The following background is drawn from the Complaint.

### A. Negotiation, Execution and Demise of the Preliminary Agreement

The Complaint alleges that in spring and early summer of 1989 "Romanek" [1] and Janivo discussed a proposal under which Janivo would purchase the land and the building for $155,737,000 free and clear, the amount to be paid in stages upon completion and lease-up of the building. The parties also discussed an alternative proposal under which Janivo would have the right to purchase a 20% investment in the land and building for $31,-147,400.

Janivo alleges that under either alternative "Romanek was to guarantee completion of the Building, guarantee payment of all development and operating costs through lease-up, and guarantee specified minimum returns to Janivo. Ultimately, Romanek's failure to follow through on any of these guarantees caused Janivo to withdraw as a potential investor in the land and the Building." (Complaint at 4, ¶ 14.)

Plaintiff alleges that the above proposals were preliminarily agreed to, with good faith negotiations to follow, in an initial preliminary agreement of April 1989 and an addendum to that agreement of July 1989 (collectively "Preliminary Agreement").

Pursuant to the Preliminary Agreement, Romanek assigned Janivo a 20% interest in the land, and Janivo posted a $31,147,000 letter of credit. Janivo alleges the letter of credit "served to enforce Romanek's promise not to further encumber the property without Janivo's consent," while the parties negotiated toward a partnership agreement and final contract of sale pursuant to the Preliminary Agreement. (Complaint at 5, ¶ 20.) Janivo claims, however, that various conditions to its obligation to purchase or invest in the land and building were not met. Specifically, (1) the partnership agreement was not executed; (2) the final contract of sale or investment was not executed; and (3) a closing on the contract did not occur, with Romanek fulfilling all conditions to closing. Janivo claims among unfulfilled conditions to closing were Romanek's establishing security for all of Romanek's obligations under the Preliminary Agreement, Romanek's delivery of security for Romanek's cash-flow guarantee, and Romanek's delivery of closing documents. Janivo alleges that Romanek's failures in this regard allowed it to "walk away" from the deal with no obligation to purchase or invest. (Complaint at 7, ¶ 25.)

### B. The Role of the Defendant Banks

During Janivo and Romanek's negotiation of the Preliminary Agreement, Romanek was separately negotiating with defendant Continental to obtain predevelopment and construction financing for the building. Romanek allegedly obtained an initial $17 million predevelopment loan, and a subsequent $90 million construction loan to repay acquisition and predevelopment debt and complete the building ("Construction Loan"). Continental and Romanek allegedly asked Janivo to "reissue the letter of credit and make it payable to Continental" in order to "facilitate negotiation" of the loan agreements. (Complaint at 7, ¶ 28.) Janivo complied, and caused a Dutch bank, Pierson Heldring & Pierson, N.V., to issue a new letter of credit with Continental as beneficiary ("Letter of Credit"). This Letter of Credit is the one at issue in the complaint. Janivo entered into a separate agreement with Continental defining conditions for drawing on the Letter of Credit; the agreement was later amended to add First Interstate, which, since the initial separate agreement, had become co-lender and subject to all rights and obligations of Continental (separate agreement and amendment collectively "Separate Agreement"). Janivo alleges that the "Separate Agreement referred both to the Preliminary Agreement and to the Construction Loan, and must be interpreted with reference to the provisions of both of those agreements." (Complaint at 8, ¶ 31.) The Separate Agreement, as characterized by Janivo, established that Janivo would not draw on the Letter of Credit

---

1. There is an ambiguity in the Complaint. The Complaint uses "Romanek" as a defined term meaning "St. Clair Associates and Romanek's other interests." (Complaint at 3, ¶ 11.) This group definition is confusing, for in the very next paragraph plaintiff alleges that "Romanek and Janivo discussed the terms of a proposal." Was that Marvin Romanek, St. Clair Associates or one of Marvin Romanek's enigmatic "other interests"? This ambiguity permeates the Complaint. Despite the confusion, the court hereafter will use the term "Romanek" in summarizing plaintiff's allegations.

"without first providing Janivo with a title policy endorsement declaring that the entire beneficial interest in the land trust was held by Romanek...., prevent[ing] Continental from drawing until Janivo received the partnership rights for which it had bargained in the Preliminary Agreement." (Complaint at 8–9, ¶ 32.) On July 10, 1989, a Continental Senior Vice President wrote to Dr. Harry Bergstra of Janivo to "confirm that [Continental] will hold the Letter of Credit in trust (and not as collateral for any loan to St. Clair Associates or Marvin [presumably Romanek]) and will be held or returned to you at your further direction." (Complaint at 10, ¶ 35 & Ex. I.)

Defendants allegedly made their Construction Loan in or about January 1990, before any conditions to Janivo's obligation to invest had occurred. Janivo was not a party to the loan. Janivo, however, was referenced in the Construction Loan. Janivo was to be admitted as a limited partner of Romanek and was to contribute over $31 million to the new partnership. As characterized by Janivo, the construction loan "acknowledged that the only purpose of the Letter of Credit was to secure Janivo's obligations to Romanek under the Preliminary Agreement," leaving Janivo with no obligation to make the contribution and defendants with no right to draw on the Letter of Credit if Janivo did not enter the partnership. (Complaint at 11, ¶ 38.)

Janivo and Romanek's negotiations stalled. Romanek allegedly "refused to make binding the guarantee he agreed to in the Preliminary Agreement. Among others, Romanek refused to provide the cash flow guarantee." (Complaint at 13, ¶ 43.) Janivo and Romanek did not enter into a partnership agreement or final contract of sale. This development lead Janivo to notify Romanek on October 30, 1991, that Janivo was terminating the Preliminary Agreement, and Janivo proffered its 20% beneficial interest in the land trust. Janivo now claims to no longer own any interest in the land trust. Janivo claims Continental was aware of all these developments, and specifically that Janivo on October 30, 1991, demanded return of the Letter of Credit.

On or about November 18, 1991, Continental delivered to Janivo a title policy insuring the building ("Title Policy"). On November 20, 1991, Continental made presentment to the confirming bank seeking payment of the full proceeds of Janivo's Letter of Credit. Janivo claims the Title Policy does not comply with the Separate Agreement, even under alternative interpretations of material portions of the Separate Agreement. A Continental Vice President allegedly presented to the confirming bank (Algemene Bank Nederland, N.V.) a certificate falsely claiming that all requirements to draw upon the Letter of Credit had been met. The confirming bank paid Continental the proceeds of the Letter of Credit, $31,147,400. The confirming bank charged the issuing bank, and the issuing bank charged Janivo. Defendants have allegedly applied the proceeds "on account of the balance due under the Construction Loan." (Complaint at 16, ¶ 58.)

Janivo now brings its eight-count Second Amended Complaint, each count of which is described below. The challenges to the eight separate counts are considered in turn.

## II. DISCUSSION

### A. Count I Against Continental for Breach of Trust

■ Count I is against defendant Continental for breach of trust. This count claims that Continental, as confirmed in its July 10, 1989, letter to Janivo, held the Letter of Credit in trust pending further direction. Despite Janivo's October 30, 1991, request for return of the Letter of Credit, and notification to Continental that the partnership negotiations with Romanek were not proceeding well, Continental drew on the Letter of Credit. In so doing, it failed to administer the trust according to the terms of the July 10, 1989, letter, willfully and maliciously violating its obligations.

Defendants' argument for dismissal is based upon the claim that the Separate Agreement between Janivo and Continental supersedes the July 10, 1989, letter on which the trust argument is based.[2] Defendants'

**2.** Ultimately the superseding Separate Agreement is between Janivo and Continental and First In-

argument is not per se that the allegations of breach of trust do not state a claim. Rather, defendant's argument is that plaintiff has pleaded itself out of court, cf. *Early v. Bankers Life & Casualty Co.,* 959 F.2d 75, 79 (7th Cir.1992); in other words the Complaint's general allegations regarding the Separate Agreement nullify the allegation of trust agreement.

A Rule 12(b)(6) motion to dismiss for failure to state a claim may be granted if it is beyond doubt that the plaintiff is unable to prove any set of facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must take all well-pleaded facts as true, and must view them in the light most favorable to the plaintiff. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Plaintiff furthermore is entitled to all reasonable inferences that can be drawn from the Complaint. *Id.*

■ The court finds persuasive defendant's argument that the letter allegedly creating the trust arrangement was superseded by the execution of the Separate Agreement. The Separate Agreement was signed by Continental September 7, 1989,[3] and so, since "a contract is operative as such from the time ... when the last act necessary for its completion is performed," *O'Brien v. Kawazoye,* 27 Ill.App.3d 810, 327 N.E.2d 236, 241 (1975), the Separate Agreement was subsequent to the letter allegedly giving rise to the trust relationship.

Ruling that the Separate Agreement is subsequent in time to the letter does not determine whether the Separate Agreement supersedes the letter. Since "[a] written agreement that is complete on its face supersedes all prior agreements on the same subject matter," *Magnus v. Lutheran General Health Care System,* 235 Ill.App.3d 173, 176 Ill.Dec. 209, 216, 601 N.E.2d 907, 914, *appeal denied,* 147 Ill.2d 628, 180 Ill.Dec. 150, 606 N.E.2d 1227 (1992), the court must consider whether the Separate Agreement meets that standard. And while plaintiff understandably wants to cast the issues here as fact issues, "[w]here a written agreement is clear and explicit, a court must enforce the agreement as written. Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids." *Rakowski v. Lucente,* 104 Ill.2d 317, 84 Ill.Dec. 654, 657, 472 N.E.2d 791, 794 (1984); *see also LaScola v. US Sprint Communications,* 946 F.2d 559, 565 (7th Cir.1991) (construction of contract is question of law for the court unless material facts are disputed).

While there is no merger clause in the Separate Agreement, the court nonetheless holds that the Separate Agreement supersedes any alleged previous trust arrangement between Continental and Janivo. The issue comes down to the fact that the alleged trust arrangement cannot be reconciled with the Separate Agreement. The Separate Agreement establishes when Continental may draw on the letter agreement and under what conditions. Plaintiff's theory of the effect of the July 10, 1989, letter would eviscerate the Separate Agreement. As Continental argues, the two documents cannot be harmonized, and the Separate Agreement, complete on its face, prevails.

Defendants' motion to dismiss is accordingly granted regarding Count I.

### B. Counts II and III Against Continental for Breach of Presentment Warranty

Count II alleges that "[b]y presenting a false Certificate and failing to comply with all requirements to a draw, Continental has breached its warranty of presentment under

---

terstate. The breach-of-trust allegations in Count I, however, are only against Continental, and so no reference is made to First Interstate.

**3.** Continental is right to rely on *Venture Associates Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429, 431–32 (7th Cir.1993), for the proposition that the court can use Continental's submission of the Separate Agreement in resolution of this Rule 12(b)(6) motion to dismiss. The Separate Agreement is referred to in the Complaint and is central to plaintiff's claim, which, under *Venture Associates,* means the court can consider defendant's submission of the Separate Agreement on a Rule 12(b)(6) motion without converting the motion into one for summary judgment. *Id.*

ILL.REV.STAT. ch. 26, ¶ 5–111(1) [now codified at 810 ILCS 5/5–111(1) ].” (Complaint at 18, ¶ 67.) That statutory provision provides in part: “Unless otherwise agreed the beneficiary by transferring or presenting a documentary draft or demand for payment warrants to all interested parties that the necessary conditions of the credit have been complied with.” 810 ILCS 5/5–111(1). Continental’s presentment, plaintiff alleges, breached this warranty as to Janivo, which, it claims, is an “interested party” within the meaning of the statute.

■ Continental’s first argument is that Count II fails to state a claim under this court’s Memorandum Opinion and Order dated November 16, 1992 (“Memorandum Opinion”). That order interpreted the unambiguous language of paragraph 7 of the Separate Agreement such that Continental had two *alternative* methods of satisfying its requirement of providing a conforming title policy. This court held, with the issue squarely before it, that “[w]hile subparagraph 7(b) requires Continental to provide a title policy with the four enumerated endorsements, the last sentence of paragraph 7 clearly offers Continental an alternative method of performance.” (Memorandum Opinion at 6.) Thus, Continental contends, plaintiff has not alleged that Continental presented a false certificate because it has not alleged that the proffered title policy was noncompliant with the Separate Agreement in either way. Janivo, however, rightly points out that it now alleges that Continental has not performed even under the alternative method of performance. Therefore, the defect the court found in Janivo’s previous allegations was cured. However, the way Janivo has pleaded the instant Complaint it is Count III that presents the allegation concerning alternative performance under the last sentence of paragraph 7 of the Separate Agreement. Count III survives defendants’ attack based on the court’s previous order, but not Count II.

■ But Continental also raises the issue of whether Illinois’ presentment warranty statute allows for a cause of action based on noncompliance with the underlying contract governing the letter of credit. The court agrees with Continental that Illinois courts would not allow a cause of action on that theory. In *First Arlington Nat’l Bank v. Stathis,* 115 Ill.App.3d 403, 71 Ill.Dec. 145, 152, 450 N.E.2d 833, 840 (1983), the Illinois Appellate Court held that “the basic warranties under section 5–111(1) are that the documents comply on their face with the terms of the letter of credit, and that none of the exceptions set forth in section 5–114(2)(b) are present. The warranty provisions do not authorize the issuer to assert defenses which its customer might have to the underlying contract.” *Id.; see also Amwest Surety Ins. Co. v. Republic Nat’l Bank,* 977 F.2d 122, 128 (4th Cir.1992) (South Carolina law), *cert. denied,* —— U.S. ——, 113 S.Ct. 1582, 123 L.Ed.2d 149 (1993).

■ Janivo’s primary response to this theory is to argue that, since Janivo is the account party, the independence principle does not apply. But the court does not find a distinction in Illinois law based on who is the interested party asserting a claim under section 5–111(1). If the interested party is the account customer, then, to the extent it has been wronged, the account customer has its own remedy based on the underlying agreement. It is therefore unlikely that the section 5–111(1) warranty was meant to protect the underlying agreement.

The court agrees with Continental that Janivo has not stated a section 5–111(1) warranty claim in either Count II or Count III, and therefore defendants’ motion in that regard is granted.

### C. *Count IV Against Continental and First Interstate for Breach of the Separate Agreement*

The court agrees with defendants that the court’s November 16, 1992, holding applies to Count IV because of the resolution of the interpretive issue discussed above. Accordingly, defendants’ motion to dismiss regarding Count IV is granted.

### D. *Count V Against Continental and First Interstate for Breach of the Separate Agreement*

■ Defendants challenge Count V by way of a motion for summary judgment.

Count V alleges that even if the last sentence of paragraph seven of the Separate Agreement provides for alternative performance (as the court held November 16, 1992), the Title Policy delivered to Janivo did not comply with that sentence. Janivo alleges numerous discrepancies between the delivered Title Policy and the Title Commitment referred to in the last sentence of paragraph seven.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the evidence of the non-movant must be believed, and all justifiable inferences must be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). This court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.

The issue here is whether there is a genuine issue of material fact as to defendants' alleged material breach of the Separate Agreement through noncompliance with the last sentence of paragraph seven. Based on a review of the parties' materials, this court concludes that there are issues of material fact that must be resolved at trial, including, but not limited to, whether inclusion of the standard exceptions in the delivered Title Policy constituted a material breach of the Separate Agreement on the part of defendants. *See Sahadi v. Continental Ill. Nat'l Bank & Trust Co.,* 706 F.2d 193, 196–97 (7th Cir.1983) (materiality issues are "especially unsuited to resolution by summary judgment").

Defendants' motion for summary judgment on Count V is therefore denied.

### E. *Counts VI and VII—Unjust Enrichment and Conversion*

■ Returning to defendants' motion to dismiss, that motion attacks Count VI, brought for unjust enrichment, on the basis that "[u]nder Illinois law, a plaintiff may not state a claim for unjust enrichment when a contract governs the relationship between the parties." *First Commodity Traders, Inc. v. Heinhold Commodities, Inc.,* 766 F.2d 1007, 1011 (7th Cir.1985). Defendants argue that the Separate Agreement governs the conditions under which they could draw on the letter of credit.

Defendants' position prevails. The Separate Agreement is attached to the Complaint, so the court may refer to that agreement in resolving this motion to dismiss. *See United States v. Wood,* 925 F.2d 1580, 1581–82 (7th Cir.1991) (citing *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985) (pleading is deemed to include any document attached as an exhibit)). It is clear from the Separate Agreement that the Separate Agreement was meant to govern the conditions under which the banks could draw on the Letter of Credit. It thus fits squarely within Illinois law to reject an unjust enrichment claim on this basis. *See also Gordon v. Matthew Bender & Co.,* 562 F.Supp. 1286, 1298 (N.D.Ill.1983) (granting Rule 12(b)(6) motion to dismiss in similar instance, holding "[a]n action sounding in quasi contract will not lie" where relationship between parties is governed by expressed contract).

Consider the opposite conclusion: Count VI is based on an allegation that "[i]n the alternative, if ... the Banks have not breached the Separate Agreement, then the Banks have been unjustly enriched." (Complaint at 23, ¶ 84.) Under this theory, the Banks have been fully justified in their draw under their contract with Janivo. Nonetheless, Janivo argues, the Banks' draw was unjust. It is the court's reading of Illinois law that the contract in this commercial dispute determines whether a party's actions governed by the contract were a violation of the other party's rights. To hold otherwise would undermine the reason for entering into a commercial contract in the first place—to effect a bargained-for exchange of rights and duties.[4]

---

4. Other judges of this district, applying *First*      *Commodity Traders,* have allowed unjust enrich-

This same theory applies equally well to the action for conversion alleged in Count VII. Conversion is "the wrongful deprivation of property from the person entitled to possession." *Glaser v. Kazak,* 173 Ill.App.3d 108, 122 Ill.Dec. 881, 885, 527 N.E.2d 379, 383 (1988). This allegation, again made under the assumption that the banks have acted rightfully under the Separate Agreement, is negated by the existence of a contract defining the parties' respective rights. Once again, a contract is of little value if a party's actions in compliance with the contract could be a conversion of property transferred pursuant to the contract. *Cf. Securities Fund Servs., Inc. v. American Nat'l Bank & Trust Co.,* 542 F.Supp. 323, 328 (N.D.Ill.1982); *Eggert v. Weisz,* 839 F.2d 1261, 1264 (7th Cir.1988).

Accordingly, defendants' motion is granted as to Counts VI and VII.

### F. *Count VIII—Punitive Damages*

Defendants finally challenge Count VIII, which purports to state a claim for punitive damages. The specific issues defendants raise need not be addressed, since only Count V survives this motion, and Janivo represents that it is not seeking punitive damages arising out of Count V.

Accordingly, defendants' motion is granted regarding Count VIII.

### *CONCLUSION*

The Motion of Continental and First Interstate for Summary Judgment on Count V of the Second Amended Complaint is denied. Defendants' Joint Motion to Dismiss Counts I–IV and VI–VIII of the Second Amended Complaint is granted.

---

ment claims to proceed as alternative counts to breach of contract counts. *E.g., Quadion Corp. v. Mache,* 738 F.Supp. 270, 278 (N.D.Ill.1990). This is a straightforward application of Rule 8(e)(2) of the Federal Rules of Civil Procedure. Here, however, plaintiff has not alternatively pleaded such that the *Quadion Corp.* approach would apply. The court believes it should accept alternative pleading of unjust enrichment if the unjust enrichment count pleads in the alternative that a contract does not *govern* the relationship between the parties. Here, plaintiff pleads in Count VI only that there has, alternatively, been no *breach* of contract.